IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CITIZENS UNITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. A. No. 18-1862 (RDM) |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE. | ) | |
| | ) | |
| Defendant. | ) | |

## DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1)     I am currently the Assistant Section Chief ("ASC") of the Record/Information

Dissemination Section ("RIDS"), Information Management Division ("IMD"), Winchester,

Virginia and, in the absence of RIDS Section Chief, David M. Hardy, I serve as Acting Section

Chief for RIDS.   I have held this position since June 26, 2016.   I joined the FBI in September

2011, and prior to my current position, I was the Unit Chief, RIDS Litigation Support Unit from

November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel,

Freedom of Information Act ("FOIA") Litigation Unit, from September 2011 to November 2012.

In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA

and Privacy Act ("PA") litigation cases nationwide.   Prior to my joining the FBI, I served as a

Senior Attorney, U.S. Drug Enforcement Administration ("DEA") from September 2006 to

September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and

served as agency counsel representing the DEA in FOIA/PA suits nationwide.   I also served as

a U.S. Army Judge Advocate General's Corps Officer in various assignments from 1994 to

September 2006 culminating in my assignment as Chief, General Litigation Branch, U.S. Army

Litigation Division where I oversaw FOIA/PA litigation for the U.S. Army.    I am an attorney

registered in the State of Ohio and the District of Columbia.

(2)    In my official capacity as Acting Section Chief of RIDS, I supervise

approximately 244 employees who staff a total of twelve (12) Federal Bureau of Investigation

Headquarters ("FBIHQ") units and two (2) field operational service center units whose collective

mission is to effectively plan, develop, direct, and manage responses to requests for access to

FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of

2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of

1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures;

judicial decisions; and Presidential and Congressional directives.    My responsibilities as Acting

Section Chief also include the review of FBI information for classification purposes as mandated

by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), and the preparation of declarations

in support of Exemption 1 claims asserted under the FOIA.    The Section Chief, RIDS has been

designated by the Attorney General of the United States as an original classification authority

and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1.

Accordingly, when serving in the position of the Section Chief, RIDS in the absence of the

incumbent, I assume the designated original classification and declassification authority.    The

statements contained in this declaration are based upon my personal knowledge, upon

information provided to me in my official capacity, and upon conclusions and determinations

reached and made in accordance therewith.

2

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of the FOIA, 5 U.S.C. § 552.   Specifically, I am aware of the Department of State's ("DOS") consultation to the FBI seeking review of FBI information/equities within six documents (24 pages).

(4)     In accordance with *Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), this declaration is submitted in support of the Defendant's Motion for Summary Judgment.   This declaration provides justification for the FBI's withholding of certain information within the DOS records pursuant to FOIA Exemptions 1, 3, 6, 7C, and 7(E).

### REFERRAL OF RECORDS TO THE FBI FOR CONSULTATION

(5)     Plaintiff submitted a FOIA request dated June 22, 2018 to the DOS seeking records related to an October 2016 briefing at the State Department.   On August 8, 2018, Plaintiff filed a lawsuit against DOS, seeking the disclosure of the requested records.   ***See* ECF No. 1, Complaint.**

(6)     DOS located six records (24 pages) during its search and concluded that they potentially contained FBI information/equities.   Accordingly, DOS sent the records to the FBI for consultation in a series of four consultations.   DOS identified the consultation request as F-2018-04736, segment IPS-0002.   After reviewing the records, the FBI asked for no information to be withheld on 13 pages; asked for information to be redacted pursuant to FOIA Exemptions 1, 3, 6, 7(C), and 7(E) on six pages that DOS released in part; and asked for five pages to be withheld in full pursuant to FOIA Exemptions 3 and 7(E).

3

### Documents C06679729, C06682574, and C06682575

(7)      The FBI received the first of the four consultations on March 14, 2019, containing

three records identified by DOS as document numbers C06679729 (three pages), C06682574

(one page), and C06682575 (five pages).    FBI reviewed the records and initially advised the

DOS of its initial withholding determinations on April 18, 2019 for these three documents;

however, the FBI later reconsidered certain withholdings and provided a revised response to

DOS on April 26, 2019.    The FBI's final response requested FBI information/equities be

redacted on two pages of document C06679729 pursuant to FOIA Exemptions 1, 3, 6, 7(C), and

7(E), and in document C06682574 pursuant to FOIA Exemptions 3, 6, 7(C), and 7(E).    The FBI

also asked that C06682575 be would withheld in full pursuant to FOIA Exemptions 3 and 7(E).

### Document C06679743

(8)      The FBI received a second request for consultation from the DOS on April 24,

2019, containing a two page typed summary of a meeting, identified by DOS as C06679743.

The FBI provided its initial determinations to DOS on April 26, 2019; however, the FBI later

revised that response on May 6, 2019, advising that DOS could release a less-redacted version of

this document with certain FBI information/equities still protected on the first page pursuant to

FOIA Exemptions 1, 3, and 7(E).

### Document C06682580

(9)      The FBI received a third request for consultation on April 29, 2019.    While this

consultation involved DOS records, it was officially routed to the FBI through the Department of

Justice Office of Information Policy on behalf of DOS.    DOS identified the document as

4

C06682580 (two pages).    The FBI reviewed the document and determined that it contained no

FBI information/equities.    The FBI advised DOS of its determination on May 6, 2019.

### Document C06751858

(10)    The FBI received a fourth and final request for consultation from the DOS, also

on April 29, 2019, identified by DOS as C06751858 (11 pages).    The FBI reviewed the

document and initially determined that all pages should be withheld pursuant to FOIA

Exemptions 1, 3, 6, 7(C), and 7(E), and so advised DOS on May 3, 2019.    Subsequently, the

FBI concluded that information could be segregated and released, and accordingly provided a

revised response to DOS on May 6, 2019.    The FBI's final response requested the protection of

FBI information/equities on two pages pursuant to FOIA Exemptions 3 and 7(E) and Exemptions

1, 3, and 7(E), respectively.

(11)    The following table summarizes the disposition of the six documents sent to the

FBI on consultation by DOS:

| FBI's Disposition of Its Information/Equities in DOS Consultation Records | | | | |
|---|---|---|---|---|
| Doc # | Description | Page # | Exemptions | FBI Disposition[1] |
| C06679729 | Three page e-mail chain between DOS and FBI on September 29-30, 2016, and between DOS and DOJ on February 1-2, 2017 | 1 | (b)(1) (b)(3) (b)(6) (b)(7)(C)[2] (b)(7)(E) | RIP |
| | | 2 | (b)(1) (b)(3) | RIP |

---

[1]  RIP = released in part; WIF = withheld in full

[2]  The FBI mistakenly asserted Exemptions 6 and 7(C) to redact the name of an FBI executive on this page.    The FBI has advised DOS that is can release this information.    The FBI also redacted the executive's e-mail address and Unique Employee Identifier (UEID) pursuant to FOIA Exemptions 6 and 7(C); those redactions remain.

| | | | (b)(7)(E) [3] | |
|---|---|---|---|---|
| | | 3 | n/a | No FBI redactions |
| C06679743 | Two page typewritten notes of meeting between Christopher Steele and Tatyana Duran of Orbis Security, and Kathleen Kavalec of DOS | 1 | (b)(1) (b)(3) (b)(7)(E) | RIP |
| | | 2 | n/a | No FBI redactions |
| C06682574 | One page e-mail from Kathleen Kavalec, DOS to FBI dated October 13, 2016 | 1 | (b)(3) (b)(6) (b)(7)(C) (b)(7)(E) [4] | RIP |
| C06682575 | Five page attachment to the e-mail identified above as C06682574 | 1-5 | (b)(3) (b)(7)(E) | WIF |
| C06682580 | Two page e-mail chain between Kathleen Kavalec, DOS, and Bruce Ohr, DOJ | 1-2 | n/a | No FBI equities |
| C06751858 | 11-pages of handwritten notes by Kathleen Kavalec, DOS, from her meeting with Christopher Steele and Tatyana Duran of Orbis Security | 1 | (b)(3) (b)(7)(E) | RIP |
| | | 2-4 | n/a | No FBI redactions |
| | | 5 | (b)(1) (b)(3) (b)(7)(E) | RIP |
| | | 6-11 | n/a | No FBI redactions |

---

[3]  The FBI mistakenly asserted Exemptions 6 and 7(C) to redact the name of an FBI executive on this page.   The FBI has advised DOS that is can release this information.

[4]  The FBI mistakenly asserted Exemptions 6 and 7(C) to redact the name of an FBI executive on this page.   The FBI has advised DOS that is can release this information.   The FBI also redacted the executive's e-mail address pursuant to FOIA Exemptions 6 and 7(C); that redaction remains.

## JUSTIFICATION FOR NONDISCLOSURE UNDER THE FOIA

(12)     The FBI processed the six records (24 pages) sent for consultation by DOS in response to Plaintiff's FOIA request to achieve maximum disclosure consistent with the access provisions of the FOIA.     The FBI conducted a document-by-document, line-by-line review of each page, and made every effort to provide Plaintiff with all material in the public domain as well as all reasonably segregable, non-exempt FBI information in the responsive records.

(13)     Following its review, the FBI concluded that the records contained information that is exempt information to FOIA Exemptions 1, 3, 6, 7(C), and 7(E).     Further description of the information withheld, beyond what is provided in this declaration, could identify the actual exempt information the FBI has protected.

(14)     All information withheld by the FBI is exempt from disclosure pursuant to the cited FOIA exemption(s), or is so intertwined with exempt information that segregation is not possible without revealing the exempt information.

### *EXEMPTION 1 – CLASSIFIED INFORMATION*

(15)     The FBI has protected a limited amount of information in the consultation records because it is classified.     Exemption 1 protects from disclosure records that are:

(A)     specifically authorized under criteria established by an Executive Order to be kept secret in the interest of national defense or foreign policy; and

(B)     are in fact properly classified pursuant to such Executive Order.

5 U.S.C. § 552(b)(1).

(16)     The FBI's analysis of whether Exemption 1 permits the withholding of agency information consists of two significant steps.     The FBI must determine first whether the

7

information contained in the records qualifies for classification under the applicable Executive Order governing classification and protection of national security information, and second whether the information actually has been classified in compliance with the various substantive and procedural criteria of the Executive Order.

(17)     E.O. 13526 presently governs the classification and protection of information that affects the national security (*i.e.*, "the national defense of foreign relations of the United States," § 6.1(cc)), and prescribes the various substantive and procedural criteria for classifying information.   I am bound by the requirements of E.O. 13526 when making classification determinations.

(18)     For information to be properly classified, and thus properly withheld pursuant to Exemption 1, the information must meet the substantive requirements set forth in E.O. 13526 § 1.1(a), which requires:

> (1)     an original classification authority must have classified the information;
>
> (2)     the information must be owned by, produced by or for, or be under the control of the United States Government;
>
> (3)     the information must fall within one or more of the categories of information listed in § 1.4 of [the] order; and
>
> (4)     the original classification authority must determine that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority must be able to identify or describe the damage.

(19)     In addition to these substantive requirements, certain procedural and administrative requirements set forth in E.O. 13526 must be followed before information can be considered to be properly classified, such as proper identification and marking of documents. Specifically, E.O. 13526 requires that:

8

(a)    Each document was marked as required and stamped with the proper classification designation.   *See* E.O. 13526, § 1.6(a)(1) – (5).

(b)    Each document was marked to indicate clearly which portions are classified and which portions are exempt from declassification as set forth in E.O. 13526 § 1.5(b).   *See* E.O. 13526, § 1.6(a)(5)(c).

(c)    The prohibitions and limitations on classification specified in E.O. 13526, § 1.7 were followed.

(d)    The declassification policies set forth in E.O. 13526, §§ 3.1 and 3.3 were followed.

(e)    Any reasonably segregable portions of these classified documents that did not meet the standards for classification under E.O. 13526 were declassified and marked for release, unless withholding was otherwise warranted under applicable law.

(20)    With the above requirements in mind, I determined that the information protected pursuant to Exemption 1 is currently and properly classified.   Specifically, this information is owned by, was produced by or for, and is under the control of the U.S. Government; was classified by an original classification authority; meets all of the procedural requirements of E.O. 13526; and warrants classification at the SECRET level to protect "intelligence activities (including covert action), intelligence sources or methods, or cryptology," *see* E.O. 13526, § 1.4(c), to protect "foreign relations or foreign activities of the United States, including confidential sources," *see* E.O. 13526, § 1.4(d), because unauthorized disclosure of this information could be expected to serious damage to national security.   Each category of classified information is discussed below.

(21)    I examined the information protected in this case pursuant to Exemption (b)(1) in light of the body of information available to me concerning the national defense and foreign relations of the United States.   This information was not examined in isolation.   Instead, it was

evaluated with careful consideration given to the impact that its disclosure could have on other

sensitive information contained elsewhere in the United States Intelligence Community's files.

Equal consideration was given to the impact that other information – both in the public domain

and likely known or suspected by present or potential adversaries of the United States – would

have upon the information protected here.

(22)   The justifications for protecting classified information here were prepared with

the intent that they be read with consideration given to the context in which the classified

information is found.   This context includes not only the surrounding unclassified information,

but also other information already in the public domain, as well as information likely known or

suspected by other hostile intelligence entities.   It is my judgment that any greater specificity in

the descriptions and justifications set forth with respect to information relating to intelligence

activities, sources, and methods and foreign relations/activities of the United States could

reasonably be expected to harm interests that FOIA exemptions were designed to protect.

### E.O. 13526, § 1.4(c) – Intelligence Activities, Sources and Methods

(23)   E.O. 13526, § 1.4(c) authorizes the classification of "intelligence activities

(including covert action), intelligence sources or methods, or cryptology."   An intelligence

activity, source, or method includes any intelligence action or technique utilized by the FBI

against a targeted individual or organization that has been determined to be of national security

interest, and includes any procedure (human or non-human) utilized to obtain information

concerning such individual or organization.   An intelligence activity, source, or method has two

characteristics.   First, the intelligence activity, source, or method, and information generated by

it, is needed by United States Intelligence/Counterintelligence agencies to carry out their

missions.    Second, confidentiality must be maintained with respect to the use or non-use of the

activity, source, or method, including intelligence sources, if the viability, productivity, and

usefulness of the activity, source, and method are to be preserved.

(24)    Intelligence activities, sources, and methods must be protected from disclosure in

every situation in which a certain intelligence capability, technique, or interest – or its specific

use – is unknown to the groups against which it is deployed, since those groups could take

countermeasures to nullify its effectiveness.    Intelligence activities, sources, and methods are

valuable only so long as they remain unknown and unsuspected.    Once an intelligence activity,

source, or method – or the fact of its use or non-use in a certain situation – is discovered, its

continued successful use is seriously jeopardized.

(25)    Moreover, the U.S. Government must do more than prevent explicit references to

intelligence activities, sources, and methods; it must also prevent indirect references to them.

One vehicle for gathering information about the U.S. Government's capabilities is by reviewing

officially-released information.    We know that terrorist organizations and other hostile or

Foreign Intelligence groups have the capacity and ability to gather information from myriad

sources, analyze it, and deduce means and methods from disparate details to defeat the U.S.

Government's collection efforts.    Thus, even seemingly innocuous, indirect references to an

intelligence activity, source, or method could have significant adverse effects when juxtaposed

with other publicly-available data.

(26)    Here, information covered by Exemption 1 in conjunction with E.O. 13526, §

1.4(c) would, if disclosed, reveal detailed, non-public information about the FBI's use of a

11

particular intelligence source against identified targets in particular locations and at specific

periods in time, in furtherance of the FBI's counterintelligence mission.

(27)    Information protected on these pages is very specific in nature, provided during a

specific time period, and known to very few individuals.   It is my determination that the

disclosure of the specific and detailed information describing the intelligence source activities

withheld on these pages could reasonably be expected to cause serious damage to the national

security.    With the aid of this detailed information, hostile entities could educate themselves

about how the FBI interacts with intelligence sources and could also determine the level of

penetration regarding particular targets at a particular period of time, which are pieces of

information that they can use to construct a mosaic of the FBI's efforts – and level of success –

with respect to its intelligence gathering and counterintelligence mission in this area.    They

could then leverage this information to develop countermeasures to disrupt the FBI's

intelligence-gathering efforts, which would severely damage the FBI counterintelligence

missions and ability to detect and apprehend violators of national security and criminal laws of

the United States.    This information is currently and properly classified at the SECRET level, in

accordance with E.O. 13526 § 1.4(c), and is exempt from disclosure pursuant to FOIA

Exemption 1.    This same information is also protected pursuant to Exemption 3, in conjunction

with the National Security Act of 1947, 50 U.S.C. § 3024(i)(1), and Exemption 7(E).

### *E.O. 13526 § 1.4 (d): Foreign Relations or Foreign Activities*

(28)    E.O. 13526, § 1.4 (d) authorizes the classification of information about foreign

relations or foreign activities of the United States, including confidential sources.    Such

information includes information gathered from/with the assistance of and/or about foreign

12

countries.   It is sensitive due in part to the delicate nature of international diplomacy, and must be handled with care so as not to jeopardize the fragile relationships that exist between the United States and certain foreign governments.   .

(29)   In general, the unauthorized disclosure of information concerning foreign relations or foreign activities of the United States can reasonably be expected to lead to diplomatic or economic retaliation against the United States; the loss of the cooperation and assistance of friendly nations; or the compromise of cooperative foreign sources, which may jeopardize their safety and curtail the flow of information from these sources.

(30)   Here, the FBI protected the names of particular foreign countries that were the subject of intelligence reporting.   In the context of other surrounding information, disclosure of the redacted information could reasonably be expected to impair or adversely impact relations with the referenced countries, as well as other countries allied with those countries, and thus, cause harm to the national security.   Thus, this information is currently and properly classified at the SECRET level pursuant to E.O. 13526, § 1.4 (d) and is exempt from disclosure pursuant to Exemption 1.

### *EXEMPTION 3 – INFORMATION PROTECTED BY STATUTE*

(31)   Exemption 3 protects information that is specifically exempted from public disclosure by a statute that :

> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009, specifically cites to this paragraph.

13

5 U.S.C. § 552(b)(3).

### *National Security Act of 1947 (50 U.S.C. § 3024(i)(1)*

(32)    Exemption 3 was asserted in conjunction with Exemption 1 and/or 7(E) to withhold information pursuant to Section 102A(i)(1) of the National Security Act of 1947, as amended by the Intelligence Reform and Terrorism Prevention Act of 2004 ("IRTPA"), 50 U.S.C. § 3024(i)(1), which provides that the Director of National Intelligence ("DNI") shall protect from unauthorized disclosure intelligence sources and methods."    As relevant to 5 U.S.C. § 552(b)(3)(B), Section 102A of the National Security Act of 1947[5] was enacted before the date of enactment of the OPEN FOIA Act of 2009.[6]    On its face, this federal statute leaves no discretion to agencies regarding withholding of information from the public about intelligence sources and methods.    Thus, the protection afforded to intelligence sources and methods by 50 U.S.C. § 3024(i)(1) is absolute.    *See CIA v. Sims*, 471 U.S. 159 (1985).

(33)    To fulfill its obligation of protecting intelligence sources and methods, the DNI is authorized to establish and implement guidelines for the Intelligence Community ("IC") for the classification of information under applicable laws, Executive Orders, or other Presidential Directives, and for access to and dissemination of intelligence.    50 U.S.C. §§ 3024(i)(2)(A), (B).    Accordingly, the DNI has promulgated Intelligence Community Directive 700, providing that IC elements shall protect "national intelligence and intelligence sources and methods and

---

[5] July 26, 1947, c. 343, Title I, § 102A.

[6] October 28, 2009, Pub.L. 111-83, 123 Stat. 2142, 2184.

14

activities from unauthorized disclosure."[7]   The FBI is one of the member agencies comprising the IC, and as such must protect intelligence sources and methods.

(34)    In the consultation records, the FBI protected classified intelligence source and method information under both Exemption 1 in conjunction with E.O. 13526, § 1.4(c), as discussed above, and Exemption 3 in conjunction with the National Security Act of 1947.

(35)    The FBI also relied on Exemption 3, in conjunction with Exemption 7(E), to protect unclassified information that would reveal FBI intelligence sources and methods.    The National Security Act of 1947, § 3024(i)(1), makes no distinction between intelligence activities, sources or methods classified per E.O. 13526, § 1.4(c) and the disclosure of source and method information that is unclassified; the statute plainly prescribes that "intelligence sources and methods" shall be protected from disclosure irrespective of classification.    In other words, Congress specifically prohibited the disclosure of information pertaining to "intelligence sources and methods" used by the IC as a whole.    Given the plain mandate to protect the IC's sources and methods of gathering intelligence, the FBI has determined that intelligence sources and methods would be revealed if any of the withheld information is disclosed to Plaintiff; therefore, the FBI is prohibited from disclosing such information under § 3024(i)(1).

## EXEMPTION 7

### Exemption 7 Threshold

(36)    Exemption 7 of the FOIA protects from mandatory disclosure records or information compiled for law enforcement purposes, but only to the extent that disclosure could

---

[7] Intelligence Community Directive (ICD) 700, 7 June 2012, ¶ 2a.

15

reasonably be expected to cause one of the six sets of harms enumerated in the subpart of the exemption.   *See* 5 U.S.C. § 552(b)(7).

(37)     Before an agency can invoke any of the harms enumerated in Exemption 7, it must first demonstrate that the records or information at issue were compiled for law enforcement purposes.        Pursuant to 28 U.S.C. §§ 553, 534 and E.O. 12333 as implemented by the Attorney General's Guidelines for Domestic Operations ("AGG-DOM") and 28 CFR § 0.85, the FBI is the primary investigative agency of the federal government with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency, to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security, and further the foreign intelligence objectives of the United States.   The information that the FBI protected in the consultation records was information that derives from FBI investigative activities and/or duplicates information in FBI records, which was compiled during the FBI's investigations of national security matters, and with respect to C06679729, C06682574, and C06682575, were provided by DOS to the FBI for consideration in reference to the FBI's law enforcement mission.   Therefore, the information readily meets the threshold requirement of Exemption 7.

### *Exemptions 6 and 7(C) – Invasions of Personal Privacy*

(38)     Exemption 6 exempts from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."   5 U.S.C. § 552(b)(6).   All information that applies to a particular person falls within the scope of Exemption 6.

16

(39)    Exemption 7(C) similarly exempts from disclosure "records or information compiled for law enforcement purposes [when disclosure] could reasonably be expected to constitute an unwarranted invasion of personal privacy."    5 U.S.C. § 552(b)(7)(C).[8]

(40)    When withholding information pursuant to these two exemptions, the FBI is required to balance the privacy interests of the individuals mentioned in these records against any public interest in disclosure.    In asserting these exemptions, each piece of information was scrutinized to determine the nature and strength of the privacy interest of every individual whose name and/or identifying information appears in the documents at issue.    When withholding the information, the individual's privacy interest was balanced against the public's interest in disclosure.    For purposes of these exemptions, a public interest exists only when information about an individual would shed light on the FBI's performance of its mission to protect and defend the United States against terrorist and foreign intelligence threats, to uphold and enforce the criminal laws of the United States, and to provide leadership and criminal justice services to federal, state, municipal, and international agencies and partners.    In each instance wherein information was withheld pursuant to Exemptions 6 and 7(C), the FBI determined that the individuals' privacy interests outweighed any public interest in disclosure.

(41)    Here, the FBI protected the e-mail address of an FBI Special Agent, who at the time of the e-mail was a Section Chief in the FBI's Counterintelligence Division, as well as a

---

[8] The practice of the FBI is to assert Exemption 6 in conjunction with Exemption 7(C).   Although the balancing test for Exemption 6 uses a "would constitute a clearly unwarranted invasion of personal privacy" standard and the test for Exemption 7(C) uses the lower standard of "could reasonably be expected to constitute an unwarranted invasion of personal privacy," the analysis and balancing required by both exemptions is sufficiently similar to warrant a consolidated discussion.   The privacy interests are balanced against the public's interest in disclosure under both exemptions.

Unique Employee Identifier ("UEID"), which is a unique number assigned to each individual FBI employee and which is used, among other things, in classification blocks to reflect the identity of the classifier.

(42)     The FBI concluded that he has a privacy interest in his e-mail address because its public disclosure could lead to intrusive and harassing use of that account.    Also, FBI Special Agents have privacy interests in being from unnecessary, unofficial questioning as to the conduct of investigations and other FBI business.    Accordingly, the FBI concluded that this Special Agent has substantial privacy interests with respect to his e-mail address.    Also, because the UEID is a unique employee identifier, it could be used in an effort to impersonate the employee in relation to FBI business or otherwise used in an effort to obtain non-public information about the employee if released to the public.

(43)     In contrast, there is no public interest served by disclosing his e-mail address or UEID to the public because neither piece of information would, by itself, significantly increase the public's understanding of the FBI's operations and activities.

(44)     In instances where there is no public interest, any privacy interest will always prevail.    Thus, in this case and in the absence of a public interest, the FBI properly withheld the Special Agent's e-mail address and UEID pursuant to Exemptions 6 and 7(C).

### *Exemption 7(E) – Investigative Techniques and Procedures*

(45)     Exemption 7(E) protects "records or information compiled for law enforcement purposes [when release] would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the

18

law."   5 U.S.C. § 552(b)(7)(E).   This exemption affords categorical protection to techniques

and procedures used in law enforcement investigations.   It protects techniques and procedures

that are not well-known to the public as well as non-public details about the use of publicly-

known techniques and procedures.

### Collection and Analysis

(46)   As previously discussed, the FBI protected information that would reveal

intelligence source, method, and activity information in these records pursuant to Exemption 1

and/or Exemption 3.   The FBI also relied on Exemption 7(E) to protect this information because

the intelligence source, method, and activity information at issue related to the conduct of an FBI

investigation, and thus also constitutes investigative technique and procedure information.

Release of this information would disclose the identity of methods used in collecting and

analyzing information, including how and from where the FBI collects information, and the

methodologies employed to analyze it.   Such disclosures would enable investigative subjects to

circumvent FBI intelligence and information gathering efforts relying on similar, currently-used

techniques.   The relative utility of these techniques diminishes as details about their use are

disclosed over periods of time and FOIA requests.   In particular, incremental disclosures permit

the accumulation of information by adversaries about how the FBI conducts its investigations,

gathers information and intelligence, and otherwise collects and analyzes information.   Such

accumulations of information enable adversaries to educate themselves about the techniques

employed for the collection and analysis of information and the types of information of greatest

value to FBI investigations, and in turn would enable them to develop effective countermeasures

to circumvent the techniques, deprive the FBI of key investigative information/intelligence, and

19

continue to violate the law and engage in criminal activities.   Accordingly, the FBI properly asserted FOIA Exemption 7(E), in conjunction with Exemption 3 and at times Exemption 1 to protect this type of information.

### Internal FBI E-mail Address

(47)   In conjunction with Exemptions 6 and 7(C), the FBI protected its Special Agent's e-mail address.   This is the address that the Special Agent uses to communicate on a classified enclave.   Release of this address risks exploitation of the FBI's Information Technology system to gain unauthorized access to, view and manipulate data on, or otherwise interfere with activities on the FBI's classified enclave.   This, in turn, risks arming these individuals with the information or ability to circumvent the FBI's law enforcement efforts and to disrupt official business.   Thus, the FBI properly protected this information from disclosure pursuant to FOIA Exemption 7(E).

### SEGREGABILITY

(48)   The FBI reviewed the six records (24 pages) about which DOS consulted with us; determined that there were FBI information/equities on 21 pages; asked that FBI information/equities be protected on six pages, which DOS released in part; and asked that five pages be withheld in full.

(49)   On the six pages that DOS released in part following consultation with the FBI, the FBI recommended release of all reasonably segregable, non-exempt information in which it had equities.   Where it recommended redactions, it concluded that all redacted information was exempt or was intertwined with exempt information in such a fashion that further segregation

was not reasonable and risked revealing information that would trigger foreseeable harm to one

or more interests protected by the cited FOIA exemptions on these pages.

(50)    On the five pages that the FBI asked DOS to withhold in full, the FBI concluded

that the information on these pages was fully covered by the cited FOIA exemptions; that any

potentially non-exempt information was so intertwined with exempt information that it could not

be reasonably segregated for release; and that segregating any non-exempt information on these

pages would result only in the release of disjointed words, phrases, or sentences that taken

separately or together would have minimal or no informational content.

(51)    Finally, in assessing whether information was exempt and should be redacted or

withheld, the FBI compared it with information that has previously been the subject of official

public disclosures, including whether anything related to information provided by Christopher

Steele has been disclosed as part of the production of redacted versions of the Foreign

Intelligence Surveillance Act ("FISA)" applications and orders regarding Carter Page.

## CONCLUSION

(52)    The FBI processed its equities/information in the six documents (24 pages) of

responsive records that DOS sent to the FBI for consultation under the access provisions of the

FOIA to achieve maximum disclosure, and authorized the release of all reasonably segregable

non-exempt FBI information to Plaintiffs.    At the FBI's request, DOS protected certain FBI

equity information pursuant to FOIA Exemptions 1, 3, 6, 7(C), and 7(E).    The FBI carefully

examined the records and determined that the information withheld from Plaintiff, if disclosed,

would reveal information that would cause serious damage to national security; would reveal

intelligence source and method information in violation of the National Security Act of 1947;

would cause unwarranted invasions of personal privacy; and/or would disclose techniques and
procedures used for law enforcement investigations, the disclosure of which could reasonably be
expected to risk circumvention of the law.    Accordingly, the FBI has released all reasonably
segregable, non-exempt information from the records it processed in response to DOS
consultations to the FBI.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true
and correct.

Executed this _8th_ day of July, 2019.

MICHAEL G. SEIDEL
Acting Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia

22