**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CITIZENS UNITED,<br><br>            *Plaintiff*,<br><br>    v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>            *Defendant.* | Civil Action No. 18-1862 |

## <u>MEMORANDUM OPINION AND ORDER</u>

In June 2018, Plaintiff Citizens United submitted a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request to the State Department ("the Department"), seeking the disclosure of certain records relating to an October 2016 meeting between officials at the Department and Christopher Steele.  Dkt. 1-2 at 2.  Although the Department confirmed receipt of the FOIA request, Dkt. 1-3 at 2, it did not provide a substantive response within the statutorily allotted time, and Citizens United brought suit, Dkt. 1.  After this litigation commenced, the Department "located nine responsive documents, of which four were released in full, four were released in part," and one was withheld in full.  Dkt. 13-5 at 13 (Stein. Decl. ¶ 50).  Unsatisfied with those withholdings and the Department's proffered justifications, Citizens United now moves for summary judgment to "challenge[] the exemptions relied" upon by the Department. Dkt. 11-1 at 5.  The Department cross-moves, arguing that its "targeted redactions fall squarely within" the claimed exemptions.  Dkt. 13-1 at 7.  For the reasons explained below, the Court concludes that the Department has properly withheld or redacted most of the records but that it has failed to offer sufficient explanations for redactions made to two records.  The Court,

accordingly, will **DENY** Citizens United's motion for summary judgment, will **GRANT** in part

and **DENY** in part the Department's motion for summary judgment, and will afford the

Department the opportunity to offer a more complete explanation for the redactions made to the

two records.

## I.  BACKGROUND

In June 2018, after Citizens United saw an article published in *The Weekly Standard*

asserting that Christopher Steele "visited the State Department [and] brief[ed] officials" in

October 2016, Citizens United submitted an online FOIA request to the Department seeking

"copies of all records relating to the . . . briefing . . . as described in the" article, including:

> Records should include, but not be limited to, the following: a) Participant lists[,]
> b) Participant notes[,] c) Briefing scheduling requests[,] d) Minutes[,] e)
> Transcripts[,] f) Briefing materials[,] g) Briefing location[,] h) After-action
> reports[,] [and] i) Audio or visual recordings[.]

Dkt. 1-2 at 2 (internal quotations omitted).  The FOIA request specified a date range of September 1,

2016 through November 30, 2016.  *Id*.  The State Department confirmed receipt of that request

that same day, Dkt. 1-3, but did not provide a substantive response, and, on August 8, 2018,

Citizens United brought this action to compel the Department to respond to the request, Dkt. 1.

After Citizens United filed suit, the Department located nine responsive records, released eight

of them in full or in part, and withheld in full one responsive document.  Dkt. 13-5 at 13 (Stein

Decl. ¶ 50).  With respect to some of the records, the Department consulted with the Federal

Bureau of Investigation ("FBI") regarding possible withholdings.  *See* Dkt. 13-4 at 3 (Seidel Decl.

¶ 6).  The parties now cross-move for summary judgment.  Dkt. 11; Dkt. 13.  The only disputes

remaining between the parties relate to the propriety of the Department's redactions and

withholdings for five documents (referred to by the parties as Documents 3, 4, 6, 7 and 9) and

the segregability of any non-exempt information.

## II.  LEGAL STANDARDS

The Freedom of Information Act is premised on the notion that "an informed citizenry" is "vital to the functioning of a democratic society [and] needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  The Act embodies a "general philosophy of full agency disclosure." *U.S. Dep't of Defense v. FLRA*, 510 U.S. 487, 494 (1994) (quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 360 (1976)).  The FOIA, accordingly, requires that agencies disclose records responsive to a request unless those records fall within one of nine exclusive statutory exemptions.  *See Milner v. Dep't of Navy*, 562 U.S. 562, 565 (2011).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011).  A court must grant summary judgment if the moving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In a FOIA action, the agency may meet its burden by submitting declarations that are "relatively detailed and non-conclusory," *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal quotation and citation omitted), and an index of the information withheld, *see Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).  Summary judgment is warranted on the basis of agency declarations when the declarations "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Larson v. Dep't of State*, 565 F.3d 857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C.Cir.1984)).

## III. ANALYSIS

### A.   Withholdings

Although the Department has invoked several exemptions to justify its withholdings, it is sufficient if it properly invoked one exemption for each withholding.  *See Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018) (observing that an agency "may withhold documents or portions thereof as long as" one of two invoked exemptions apply). Applying that principle here, and for the reasons explained below, the Court concludes that the Department permissibly withheld or redacted Documents 3, 6, and 7, but that it has yet to offer a sufficiently detailed explanation of its redactions to Documents 4 and 9.

####   1.   *Document 7 (Document C06682575)*

The parties' most substantial dispute concerns the Department's decision to withhold Document 7 in its entirety pursuant to Exemptions 3 and 7(E).  *See* Dkt. 13-5 at 12–13 (Stein Decl. ¶ 47); Dkt. 15 at 14–15.  Because the Court concludes that the Department lawfully withheld Document 7 under Exemption 3, its analysis begins and ends there.

Exemption 3 permits an agency to withhold information "specifically exempted from disclosure by statute," if such statute either "requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue" or "establishes particular criteria for withholding or refers to particular types of matters to be withheld."  5 U.S.C. § 552(b)(3). "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015) (quoting *Morley v. CIA*, 508 F.3d 1108, 1126 (D.C. Cir. 2007)).

Here, the Department invokes the National Security Act of 1947, § 102A(i), as amended

by the Intelligence Reform and Terrorism Prevention Act of 2004, 50 U.S.C. § 3024(i)(1)

(collectively, the "National Security Act"), on behalf of the FBI.  *See* Dkt. 13-4 at 14 (Seidel

Decl. ¶ 32).  The National Security Act requires the Director of National Intelligence ("DNI") to

protect "intelligence sources and methods" from "unauthorized disclosure," 50 U.S.C.

§ 3024(i)(1), and authorizes the DNI to promulgate guidelines for the intelligence community

regarding "[a]ccess to and dissemination of intelligence, both in final form and in the form when

initially gathered," *id.* § 3024(i)(2)(B).  Consistent with his duties and powers, the DNI

promulgated Intelligence Community Directive 700, which directs elements of the intelligence

community to "[p]rotect[] national intelligence and intelligence sources, methods, and activities

from unauthorized disclosure[.]"  Intelligence Community Directive (ICD)700, at 1 (June 7,

2012), *available at* https://www.dni.gov/files/documents/ICD/ICD_700.pdf.  The FBI is bound

by that directive, and it is pursuant to this obligations that the FBI "determined that . . . [it is]

prohibited from disclosing" Document 7.  Dkt. 13-4 at 15 (Stein Decl. ¶¶ 33–35); *see also*

*DiBacco*, 795 F.3d at 197–200 (explaining that, under the National Security Act, the DNI has

"authority to assign responsibility to intelligence agency heads to protect intelligence sources and

methods").

Citizens United does not dispute that the National Security Act falls within Exemption

3—nor could it.   The D.C. Circuit has repeatedly held that the National Security Act "is a valid

Exemption 3 statute."  *DiBacco*, 795 F.3d at 183; *see also Krikorian v. Dep't of State*, 984 F.2d

461, 465 (D.C. Cir. 1993).  Nor does Citizens United dispute that the National Security Act gives

the DNI, and by delegation, other elements of the intelligence community, *see DiBacco*, 795

F.3d at 197–198, "wide-ranging authority to protect intelligence sources and methods from

unauthorized disclosure," *CIA v. Sims*, 471 U.S. 159, 177 (1985) (internal quotations omitted). Instead, it disputes only that Document 7 falls within the National Security Act's coverage.  *See* Dkt. 15 at 15–17.  The relevant question, therefore, is whether the release of Document 7 would result in the unauthorized disclosure of "intelligence sources and methods."  50 U.S.C. § 3024(i)(1).

Citizens United originally argued (and rightly so) that the Department had failed to provide sufficient details about Document 7 to justify its withholding.  *See* Dkt. 11-1 at 22.  At the time Citizens United moved for summary judgment, the Department had not described when the document was created, "how many pages" it consisted of, or "whether it [was] a letter a memorandum, an email, a report, etc."  Dkt. 11-1 at 19.  In response, the Department has now offered three declarations that contain additional information to support its withholding.  Dkt. 13-4; Dkt. 13-5; Dkt. 18-1.  The most detailed information about Document 7 is set out in the supplemental declaration of David M. Hardy, the "Section Chief of the Record/Information Dissemination Section" at the FBI's "Information Management Division."  Dkt. 18-1 at 1 (Hardy Decl. ¶ 1).  In it, Hardy attests that Document 7 is "a five-page research document prepared by a third party (not Christopher Steele) about a technical subject," that it "contained potential leads of investigative interest to the FBI related to the investigation of Russia's interference in the 2016 Presidential election," and that it "was transmitted for law enforcement purposes from [the State Department] to the FBI."  *Id.* at 4 (Hardy Decl. ¶ 7).  Hardy further attests that the "intelligence source or method" that would be revealed by its disclosure is "the source of document" itself; in other words, the disclosure of Document 7 would reveal the identity of the undisclosed third party that created the document.  *Id.* at 5 (Hardy Decl. ¶ 7).  That information, attests Hardy, "could be used by adversaries—including adverse foreign government actors—in

attempting to avoid detection by the FBI because it reveals what types of information [the FBI] [relies] upon, where the FBI . . . might go to obtain the information, and what information might be relevant to in the FBI's analysis of whether particular actors or actions pose a counterintelligence threat to the United States." *Id.* at 4–5 (Hardy Decl. ¶ 7).

"The D.C. Circuit has interpreted [National Security Act] broadly, holding that material is properly withheld if it 'relates to intelligence sources and methods,' . . . or 'can reasonably be expected to lead to unauthorized disclosure of' such material." *Cable News Network, Inc. v. FBI*, 384 F. Supp. 3d 19, 30 (D.D.C. 2019) ("*CNN*") (quoting *Larson*, 565 F.3d at 865, and then *Halperin v. CIA*, 629 F.2d 144, 147 (D.C. Cir. 1980)) (emphasis omitted). Protecting sources and methods, moreover, requires more than simply "withhold[ing] the names of intelligence sources," which would "not carry out the mandate of Congress" in the National Security Act. *Sims*, 471 U.S. at 178. Because "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself," the Act reaches both unmistakably sensitive information and information that "may seem trivial to the uninformed." *Id.* (quotations omitted). Finally, it bears emphasis that Congress provided the DNI with "broad discretion to safeguard . . . sources and methods," *Sims*, 471 U.S. at 174–75, and "courts are required to given 'great deference' to the . . . assertion that a particular disclosure could reveal intelligence sources or methods," *Whitaker v. CIA*, 64 F. Supp. 3d 55, 63–64 (D.D.C. 2014) (quoting *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007)); *see also CNN*, 384 F. Supp. 3d at 31 (noting the deference owed to the FBI in this context).

Applying this deferential framework here, the Hardy declaration easily clears the hurdle for invoking Exemption 3 and the National Security Act. Hardy attests the Document 7 is a five page memorandum prepared by a third party; that it was not prepared by Christopher Steele; that

it relates to a "technical subject" of potential law enforcement interest to the FBI's investigation

of Russian interference in the 2016 Presidential election; that disclosure could reveal intelligence

sources and methods; and that such a disclosure would be used by adversaries of the United

States—including foreign states—to avoid FBI detection.  *See* Dkt. 18-1 at 4–5 (Hardy Decl.

¶ 7).  The Hardy declaration goes as far as the Court might reasonably demand, short of requiring

disclosure of the protected information itself.

In light of the Hardy declaration, Citizens United pivots to a new argument.  In a

supplemental filing, Citizens United now suggests that Document 7 does not fall within

Exemption 3 because its disclosure purportedly would reveal only that the FBI relied on

"intelligence citing open-source media."  Dkt. 19 at 2.  In support, Citizens United offers a letter

that then-Congressman (now Chief of Staff to the President) Mark Meadows sent to the Attorney

General and Inspector General.  Dkt. 19-1.  In it, Congressman Meadows states that he

"personally reviewed [Document 7] in an unclassified setting, *in camera* at the Department of

Justice" and that the sources he recalls viewing in the document "are based on open-source

media reporting[.]"  Dkt. 19-1 at 3.  (The Court does not know, and expresses no view, whether

that assertion is accurate.)  According to Citizens United, this letter "directly refutes" the

applicability of the National Security Act because the FBI's use of "open-source media" cannot

be an "intelligence source [or] method."  Dkt. 19 at 2–3.  Although Citizens United does not

expand on this argument, the contention seems to be that "open-source media" or a report that

uses "open-source media" cannot be an "intelligence source or method" as that term is used in

the National Security Act.  But, even assuming (without deciding) that Citizens United's factual

premise is correct, its argument misunderstands the governing law.

An "intelligence source" within the meaning of the National Security Act is a person or entity that "provides, or is engaged to provide, information the [intelligence community] needs to fulfill its statutory obligations." *Sims*, 471 U.S. at 177.  The Supreme Court and D.C. Circuit alike have interpreted the term to sweep broadly because the intelligence community "must rely on a host of sources" and "must have the authority to shield those . . . sources from any disclosures that would unnecessarily compromise [its] efforts." *Id.* at 169; *see also Fitzgibbon v. CIA*, 911 F.2d 755, 761–63 (D.C. Cir. 1990) (describing how the statutory term has been interpreted).  Thus, "[i]ntelligence [agencies] may protect all intelligence sources, regardless of their provenance," and even "apparently innocuous information," such as non-sensitive "information from ordinary private citizen" may be withheld.  *Fitzgibbon*, 911 F.2d at 762 (citing *Sims*, 471 U.S. at 171).  Given the breadth of the statutory test and the deference owed to the FBI's determination, Citizen United's reliance on the purported fact that Document 7 contains information from open-source media does little to further its cause.  Even if the Court credits Citizen United's assertion about the document's contents, the record still "'relates' to intelligence sources [or] methods," *CNN*, 384 F. Supp. 3d at 31 (citing *Larson*, 565 F.3d at 865), and thus falls squarely within the broad sweep of the statutory protection.

2.      *Document 6 (Document C06682574)*

Having concluded that Document 7 was properly withheld under Exemption 3, the Court turns to Document 6, the email that Document 7 was attached to.  *See* Dkt. 13-4 at 6 (Seidel Decl. ¶ 11) (describing Document 7 as a "[f]ive-page attachment" to Document 6, which is a "[o]ne page e-mail").  That record "is a one-page e-mail with a single message dated October 13, 2016," Dkt. 13-5 at 12 (Stein Decl. ¶ 43), sent by Deputy Assistant Secretary of State Kavalec to an employee of the FBI, Dkt. 13-4 at 6 (Seidel Decl. ¶ 11).  The Department produced the

document to Citizens United but, in doing so, redacted the "To," "Subject," and "Attach" lines of the email, and portions of the body of the email. *See* Dkt. 11-6 at 15 (Document 6, as produced to Citizens United). The Department later re-released the document with the FBI employee's name unredacted, Dkt. 13-5 at 12 (Stein Decl. ¶ 44); Dkt. 13-4 at 6 n.4 (Seidel Decl.), and Citizens United has now withdrawn its request for the employee's email address and identification number, *see* Dkt. 15 at 5. Thus, the only redactions still in dispute are the Department's withholding of text from the body of the email and the "Subject" and "Attach" lines.

As explained in the Stein declaration, the Exemption 3 redactions were made to Document 6 for the same reasons that Document 7 was withheld. Dkt. 13-5 at 12 (Stein Decl. ¶ 46) (referring the Court to the rationale set forth in the Seidel declaration); Dkt. 11-6 at 15 (indicating that the disputed redactions were withheld under Exemption 3 and other exemptions). Those reasons were sufficient to justify the Department's decision to withhold Document 7, and they are sufficient to justify its decision to redact the Exemption 3 material from Document 6.[1] Accordingly, like Document 7, Document 6 was lawfully withheld in part under Exemption 3.

    3.    *Document 3 (Document C06679729)*

The next dispute concerns the Department's redactions to Document 3, which is a three-page email chain with messages dated September 29, 2016, September 30, 2016, and February 2, 2017. Dkt. 13-5 at 9 (Stein Decl. ¶ 34). The Department released this document in part but has

---

[1] Although the email is marked "UNCLASSIFIED," Dkt. 11-6 at 15, Citizens United presses no objection on that basis. But even if Citizens United had flagged that marking as an issue, the objection would have been unavailing. "[T]he mere fact that information is not classified does not mean that disclosure of that information is automatically authorized." *See Talbot v. U.S. Dep't of State*, 315 F. Supp. 3d 355, 373 (D.D.C. 2018) (noting that unclassified information may fall within the scope of the National Security Act's protection under Exemption 3).

redacted "the email subject headings and the body of each email" under FOIA Exemption 1. *Id.* at 9–10 (Stein Decl. ¶ 34).

Exemption 1 permits the government to withhold information "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy" if that information has been "properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). To withhold information under Exemption 1, the Department "must show that the information has been classified in compliance with the classification procedures set forth in the applicable executive order and that only information conforming to the executive order's substantive criteria for classification has been withheld." *Looks Filmproduktionen GMBH v. CIA*, 199 F. Supp. 3d 153, 172 (D.D.C. 2016) (internal citations omitted). This burden is not especially demanding; "little proof or explanation is required beyond a plausible assertion that [the] information is properly classified," and courts must accord "substantial weight" to the agency's declaration "concerning the details of the classified status of the disputed record." *Morley*, 508 F.3d at 1124 (quoting *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981)).

According to the Department, the redacted information was withheld pursuant to Executive Order 13,526, which "prescribes a uniform system for classifying, safeguarding, and declassifying national security information[.]" Exec. Order No. 13,526, § 1.4(c)–(d), 75 Fed. Reg. 707 (Dec. 29, 2009) ("Exec. Order 13,526"). Under that order, information may be classified only if the following conditions are satisfied: (1) "an original classification authority" must classify the information; (2) the information must be "owned by, produced by or for, or [be] under the control" of the United States Government; (3) the information must fall "within one or more of the categories of information" listed in § 1.4 of the order; and (4) an original

classification authority must determine "that the unauthorized disclosure of the information reasonably could be expected to result in damage" to the national security. *Id.* § 1.1. Section 1.4(c) covers "intelligence activities (including covert action), intelligence sources or methods, or cryptology," and § 1.4(d) covers "foreign relations or foreign activities of the United States, including confidential sources." Exec. Order 13,526 §§ 1.4(c)–(d).

In support of its decision to redact the information at issue, the Department offers the declaration of Eric F. Stein, the Director of the Department's "Office of Information Programs and Services." Dkt. 13-5 at 1 (Stein Decl. ¶ 1). Stein attests that, in his "role as an original classification authority," he "determined that the information withheld by the Department" satisfies all four criteria and "falls within Sections 1.4(c) and (d)" of Executive Order 13,526, "and requires classification at the SECRET level because its unauthorized disclosure reasonably could be expected to cause serious damage to national security." Dkt. 13-5 at 5 (Stein Decl. ¶ 16). More specifically, he attests that the redacted information "relate[s] to foreign nationals suspected of conducting intelligence activities against the United States," *id.* at 10 (Stein Decl. ¶ 36), and that release of the information "could be reasonably expected to cause serious damage to the national security by undermining U.S. foreign policy and by revealing a candid U.S. Government assessment of the activities referenced [in the document] and the named individuals associated with them." *Id.* "Release of this information," he continues, "could also be expected to cause serious damage to the national security by reducing the likelihood that foreign persons will be willing to convey sensitive information in confidence to the U.S. Government, for fear that expectation of confidentiality will be breached[.]" *Id.*

Citizens United initially faulted the Department for not providing any explanation about why Document 3 is marked "No Discernable Classification" on each page. *See* Dkt. 15 at 24.

The Department has now responded by offering a supplemental Stein declaration, which "provide[s] additional facts concerning the status of [Document 3]." Dkt. 18-2 at 2 (Stein Supp. Decl. ¶ 3). Stein attests that the document is "an email chain comprising messages sent and received on the Department's classified email system" and that the "substance of each message in the chain was specifically designated as SECRET by the particular sender, with the exception of the February 2, 2017, message . . . which was marked as classified in the subject line, and whose content's classification status is derived from the rest of the chain." *Id.* (Stein Supp. Decl. ¶ 4). He further explains that the "'No Discernable Classification' markings were not placed on the document by any Department official with classification authority" but, rather, were the result of a Microsoft Outlook add-in that "could not automatically detect the classification designations of earlier emails in the chain" and the fact "that the classification marking tool was not enabled on [the relevant] account at the time the . . . message was sent." *Id.* (Stein Supp. Decl. ¶ 5). In light of this supplemental declaration, and in the absence of any controverting evidence or objection by Citizens United, the Court is persuaded that the markings do not bear on the classification of Document 3.

Turning to the four requirements set out in the Executive Order, Citizens United does not dispute that the Document 3 satisfies the first two conditions, and it instead focuses on the third and fourth criteria. *See* Dkt. 15 at 23–24. In its view, Document 3 cannot, as Stein asserts, be properly classified under §§ 1.4(c) or (d) of the Executive Order. *Id.* Citizens United posits that it is "preposterous" for the Department to contend that the redacted information relates to foreign nationals suspected of conducting intelligence activities against the United States or that release of the information could cause serious damage to the national security based on Citizens United's unsupported speculation about the redacted information. *See* Dkt. 15 at 23–25. It

assumes, for example, that the referenced foreign national is Steele, that the referenced foreign country is Russia, and that the redacted information concerns Carter Page and President Trump. *See id.*

A FOIA requester's speculation "that withheld documents might cover 'innocuous, historical,'" or otherwise non-sensitive information "is insufficient to undermine" a declaration offered by a knowledgeable agency official that the information is properly classified. *Scudder v. CIA*, 254 F. Supp. 3d 135, 144 (D.D.C. 2017). Here, Hardy attests that—despite Citizens United's assumptions to the contrary—the Department "was not passing on information it obtained from Christopher Steele" in Document 3 and that, indeed, "Kavalec had not yet met" with Steele at the time the email chain was initiated. Dkt. 18-1 at 3 (Hardy Decl. ¶ 6). Courts must, in general, accord a presumption of good faith to "reasonably detailed, non-conclusory" declarations offered by knowledgeable agency officials. *Scudder*, 254 F. Supp. 3d at 145 (quotations omitted). Given the constraints of dealing with classified information and the need to avoid the disclosure of even "innocuous information" that might form "bits and pieces" of a "mosaic" revealing information damaging to national security, *Sims*, 471 U.S. at 178; *see also Halkin v. Helms*, 598 F.2d 1, 8–9 (D.C. Cir. 1978) (analogizing the nature of intelligence activities to a "mosaic"), the Court concludes that the Stein and Hardy declarations are both sufficiently detailed and entitled to the presumption of good faith.

Nor does Citizen United's attack on the fourth criteria fare any better. The Department is entitled to substantial deference in its explanation about how disclosure could reasonably be expected to harm national security, *see CNN*, 384 F. Supp. 3d at 33, and it has outlined several ways in which that might occur. It posits, for example, that disclosure could reduce the likelihood that foreign persons will be willing to convey sensitive information in confidence to

the U.S. Government.  Dkt. 13-5 at 10 (Stein. Decl. ¶ 36).  Citizens United disputes this

explanation and argues that Steele never had any expectation of confidentiality because he

wanted the information that he conveyed to the Department to be shared with the public.  Dkt. 15

at 25.  But that contention, once again, ignores the Stein and Hardy declarations and, once again,

assumes without basis that Document 3 contains information that the Department had obtained

from Steele.  Moreover, and more importantly, "[o]nce an agency demonstrates that it has

tailored its response to the documents requested by a FOIA plaintiff," as the agency has clearly

done here, it is not the Court's place to second-guess the Department's "facially reasonable

concerns" regarding the harm disclosure might cause to national security.  *See Coldiron v. U.S.*

*Dep't of Justice*, 310 F. Supp. 2d 44, 54 (D.D.C. 2004).

Citizen United's contention that disclosure of the information would not be reasonably

expected to harm foreign relations because—it assumes—the information has already been made

public in Special Counsel Robert Mueller III's report, Dkt. 15 at 24, is an even longer stretch.

To start, an official disclosure of "similar" information does not preclude an agency from

withholding exempted information that touches on the same subject.  *ACLU*, 628 F.3d at 625

("We have repeatedly rejected the argument that the government's decision to disclose some

information prevents the government from withholding other information about the same

subject").  This conclusion is strengthened by the Department's description of the information; as

the Department explains, its withholding protects specific, non-public information; namely its

"assessment of [specific] activities" and "named individuals" associated with those activities.

Dkt. 13-5 at 10 (Stein. Decl. ¶ 36).  Finally, Citizens United's argument is, once again, premised

on unsupported speculation about the substance of classified material, and that speculation is at

odds with relatively detailed agency declarations.

Accordingly, the Court concludes that the Department has carried its burden of demonstrating that the classified information contained in Document 3 was properly redacted pursuant to Exemption 1.

4.     *Document 4 (Document C06679743) and 9 (Document C06751858)*

The final dispute between the parties concerns Documents 4 and 9.  Document 4 "is a two-page typed set of notes purporting to be derived from a meeting with Christopher Steele and Tatyana Duran of Orbis Security on October 11, 2016."  Dkt. 13-5 at 11 (Stein Decl. ¶ 40). Except for the document's subject heading and an opening background paragraph, the Department originally withheld most of the record's contents.  *See* Dkt. 11-6 at 12–13 (a copy of Record No. 4).  Later, the Department "determined that additional information may be released," Dkt. 11-6 at 16, and it released most of the record's contents except for two paragraph-sized blocks, *id.* at 18.  Document 9, in turn, "is an eleven-page set of handwritten notes" taken by Kavalec during "a meeting with Christopher Steele and Tatyana Duran of Orbis Business Intelligence on October 11, 2016."  Dkt. 13-5 at 13 (Stein Decl. ¶ 48); Dkt. 11-6 at 22–32 (Document 9, as produced to CU).  The eleven-page document contains only two redactions: a three-line redaction on page D21, Dkt. 11-6 at 22, and a half-line redaction on page D25, *id.* at 26.  Although the redactions to these documents are relatively minor, the Court agrees with Citizens United that the Department has failed to provide a sufficiently detailed explanation for these withholdings.

"When challenged, an agency must provide sufficient specificity in describing documents that were withheld and the bases therefore, so that the requester and the Court can evaluate that reasoning." *Judicial Watch, Inc. v. Rossotti*, 285 F. Supp. 2d 17, 29 (D.D.C. 2003).  Here, the Department claims that it properly redacted these records pursuant to Exemptions 1, 3, and 7(E).

*See* Dkt. 13-5 at 11–12, 13 (Stein Decl. ¶¶ 42, 49).  But aside from describing the documents and the FOIA exemptions it relied on in making its redactions, the Department offers no explanation or justification for its decisions.  *See* Dkt. 13-4 at 4–6 (Seidel Decl. ¶¶ 8, 10, 11) (merely describing the documents and listing the claimed exemptions); Dkt. 13-5 at 12–13, (Stein Decl. ¶¶ 42, 49) (referring the court to the Seidel declaration).  As a result, the Court lacks "an adequate foundation to review[] the soundness" of the redactions.  *Campbell v. United States Dep't of Justice*, 164 F.3d 20, 30 (D.C. Cir. 19998).  The Court cannot ascertain, for example, whether the redactions to Documents 4 and 9 are properly classified pursuant to an executive order or whether the redacted information falls within the ambit of the National Security Act.  Thus, before the Court can address whether the redactions were proper, it will require a more detailed explanation by the Department.  *See Brady Ctr. to Prevent Gun Violence v. U.S. Dep't of Justice*, 410 F. Supp. 3d 225, 240 (D.D.C. 2019).

## B.    Allegations of Bad Faith

Having analyzed Citizen United's specific objections to the Department's withholdings, the Court pauses to consider its more global argument that the Department has acted in bad faith.  "Agencies are entitled to a presumption that they complied with the obligation to disclose reasonably segregable material."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).  In the FOIA context, the "quantum of evidence required to overcome that presumption is not clear."  *Id.*  On the one hand, the Supreme Court has observed that "[t]he presumption of regularity supports official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties."  *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926).  But, on the other hand, the Court has held that, in light of the pro-disclosure purpose of the FOIA, a requester need only "produce

evidence that would warrant a belief by a reasonable person that" the agency failed to faithfully discharge its obligations. *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 174 (2004). Whatever standard applies, however, Citizens United has failed to offer evidence sufficient to rebut the presumption of good faith.

Citizens United offers three reasons why it believes that the Department's good faith cannot be taken at face value. First, it complains that, although its motion for summary judgment invoked what Citizens United refers to as the "political scandal and . . . ongoing national debate about the FBI's improper surveillance," the Department largely avoids discussion of that asserted context in both its briefs and supporting declarations. Dkt. 15 at 6. Second, it protests that the Department responded to its statement of material facts by disputing many of its assertions about the broader context as "immaterial and lacking reference to support in the record." *Id.* (quoting from several paragraphs in the Department's response to CU's SUMF).[2] Third, it asserts that the Department's decision to withhold certain records, "only to later disclose them," constitutes evidence of bad faith. *Id.* at 12. None of these contentions is persuasive.

As to the Department's briefing choices, it comes as no surprise—and is far from unusual—that the parties to a dispute have different theories of the case and choose to emphasize what they believe is material and persuasive. That is how the adversarial system works, and mere differences in opinion, without more, do not amount to bad faith. *See generally* ABA,

---

[2] Under Local Rule 7(h)(1), each motion for summary judgment must "be accompanied by a statement of material facts ["SUMF"] as to which the moving party contends there is no genuine issue" and each assertion of such fact must "include references to the parts of the record relied on to support the statement." Each opposition to a motion for summary judgment, in turn, must "be accompanied by a separate concise statement of genuine issues setting forth all material facts as to which it is contended there exists a genuine issue necessary to be litigated," and which must "include references to the parts of the record relied on to support the statement." Local Civ. R. 7(h)(1).

Model Rules of Professional Conduct, Rule 3.4, cmt. 1 ("The procedure of the adversary system contemplates that the evidence in a case is to be marshaled competitively by the contending parties."). Nor did the Department evince bad faith in its response to Plaintiff's statement of material facts. The Department had no obligation to agree with Citizens United about which facts are material or adequately supported by the record. *See SEC v. Grendys*, 840 F. Supp. 2d 36, 40 (D.D.C. 2012) ("To the extent [a party] argues various facts are irrelevant to the resolution of [a summary judgment] motion, [it] can . . . argue[] as such in [its] summary judgment pleadings."). The Department correctly noted, moreover, that Citizens United had failed to support many of its factual statements by citing to the record, as required by the local and federal rules. *See* Local Civ. R. 7(h)(1); *see also* Fed. R. Civ. P. 56(c) (The "party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"). Finally, Citizens United's argument that the Department's reversal of certain previously claimed withholding evidences bad faith is equally meritless. As Citizens United acknowledges, the general rule is that a reversal "constitutes evidence of good faith not bad faith," Dkt. 15 at 12 (citing *ACLU v. United States Dep't of Defense*, 628 F.3d 612, 627 (D.C. Cir. 2011)), and it has offered no reason to depart from that rule here.

To the extent Citizens United means that the Court should presume the Department, or the FBI, acted in bad faith because the requested documents relate to what Citizens United characterizes as "one of the greatest political scandals in U.S. history," Dkt. 15 at 8, that argument also fails. The Court need not engage on the substance of Citizen United's contention because it is unrelated to the only question relevant here—that is, whether there any reason to believe that the declarations proffered by the Department and the FBI are untruthful or that the Department acted in bad faith in addressing Citizens United's FOIA request. Citizens United

identifies no evidence of bad faith with respect to that question.  *Cf. Jones v. Fed. Bureau of Investigation*, 41 F.3d 238, 242 (6th Cir. 1994); *see also Khatchadourian v. Def. Intelligence Agency*, No. 16-cv-311, 2020 U.S. Dist. LEXIS 48009, at *46 (D.D.C. Mar. 19, 2020) ("Few cases in this Circuit address what constitutes bad faith, with most cases focusing on what is not bad faith.").  The mere fact that a FOIA request seeks records that may relate to politically contentious subject matter does not, standing alone, give rise to any inference that civil servants within an agency acted improperly in responding to that request.

## C.     Segregability and *In Camera* Inspection

Finally, Citizens United challenges the sufficiency of the Department's segregability determinations.  Because "[t]he focus of the FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  *Mead Data Central, Inc. v. U.S. Dep't. of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  FOIA therefore requires that any "reasonably segregable portion of [the] record shall be provided to any person requesting such record after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  Here, the Court will consider only the Department's segregability determination as to the records that it properly withheld in whole or in part, and will address the segregability of the remaining records, as necessary, only after the Department has had the opportunity to supplement its declarations.

An agency bears "the burden of justifying nondisclosure."  *Mead Data*, 566 F.2d at 260.  In meeting its burden, an agency must provide a "detailed justification" and not just make "conclusory statements."  *Id.* at 261.  An agency is not required, however, "to commit significant time and resources to the separation of disjointed words, phrases, or even sentences which taken separately or together have minimal or no information content."  *Id.* at 261 n.55.  Nor need it

"provide such a detailed justification that [it] would . . . compromise the [confidential] nature of potentially exempt information." *Id.* at 261.  Agencies, moreover, are entitled to a presumption that they "complied with the obligation to disclose reasonably segregable material," which can be overcome only by contrary evidence produced by the requester.  *See Sussman*, 494 F.3d at 1117.

The Court is satisfied that the Department has complied with its segregability obligations for Documents 3 and 6.  As to those records, Stein attests that the Department reviewed the records and determined that "no additional meaningful, non-exempt information in them can be reasonably segregated and released."  Dkt. 13-5 at 11 (Stein Decl. ¶ 38); *id.* at 12 (Decl. ¶ 45).  Nothing in the record controverts that assertion or otherwise overcomes the presumption that the Department complied with its "obligation to disclose 'any reasonably segregable portion'" of these documents.  *Boyd v. Crim. Div. of the U.S. DOJ*, 475 F.3d 381, 391 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552(b)).  If anything, the record supports the view that the Department faithfully carried out its obligation to release segregable information, as the Department has offered reasonably specific explanations of its withholdings and has released parts of the records that were not-exempt.

The more difficult question is whether the Department properly determined that it could not release any meaningful portion of Document 7.  In support of its determination that the document must be withheld in full, the Department again relies on the declaration of Michael G. Seidel.  He attests that the FBI asked the Department to withhold Document 7 in full because "the FBI concluded that the information on these pages was fully covered by the cited FOIA exemptions," that "any potentially non-exempt information was so intertwined with exempt information that it could not be reasonably segregated for release," and that "segregating any

non-exempt information on these pages would result only in the release of disjointed words, phrases, or sentences that taken separately or together would have minimal or no informational content."  Dkt. 13-4 at 21 (Seidel Decl. ¶ 50).

The Court's hesitancy about this explanation stems from the fact that it is relatively generic, does little to explain specifically why no meaningful, non-exempt information in Document 7 could not be segregated and released, and appears to turn on the assessment that any non-exempt material "would have *minimal* or no informational content."  *Id.* (emphasis added). Although a close question, the Court concludes that the Department has yet to carry its burden for three reasons.  First, the Seidel declaration lacks detail and is relatively conclusory.  Second, the declaration leaves the reader to wonder what Seidel means by "minimal . . . informational content" and whether that information might, nonetheless, bear on the workings of the government.  *See U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772 (1989) (purpose of FOIA is "to open agency action to the light of public scrutiny"). Third, although an isolated word or phrase might (or might not) be of little value, the declaration seems to acknowledge that entire "sentences" might be segregable.  Dkt. 13-4 at 21 (Seidel Decl. ¶ 50).

To resolve any doubts about the possible release of any non-exempt portions of Document 7, the Court will give the Department the opportunity to file a supplemental declaration or to submit the document for *in camera* review.  *See* 5 U.S.C. § 552(a)(4)(B) (district courts "may examine the contents" of agency records "in camera to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions").  *See* 5 U.S.C. § 552(a)(4)(B) (district courts "may examine the contents" of agency records "in camera

to determine whether such records or any part thereof shall be withheld under any of the [FOIA] exemptions").

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion for summary judgment, Dkt. 11, without prejudice, and **GRANTS** in part and **DENIES** in part Defendant's cross-motion for summary judgment, Dkt. 13.

**SO ORDERED.**


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  May 19, 2020