UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS UNITED,<br><br>    *Plaintiff*,<br><br>v.<br><br>UNITED STATES DEPARTMENT<br>OF STATE,<br><br>    *Defendant*. | Civil Action No. 18-1862 (RDM) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

MICHAEL R. SHERWIN
*Acting United States Attorney*

DANIEL F. VAN HORN
*Chief, Civil Division*

JOHNNY H. WALKER
*Assistant United States Attorney*

555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

July 27, 2020      *Counsel for Defendant*

# CONTENTS

INTRODUCTION ..................................................................................................................1

BACKGROUND ....................................................................................................................1

ARGUMENT ..........................................................................................................................3

I.  The Department properly withheld non-public information about the engagement of an intelligence source ...........................................................................4

    A.   Exemption 3 ..........................................................................................................4

    B.   Exemption 1 ..........................................................................................................6

    C.   Exemption 7(E) .....................................................................................................8

II. The Department of State properly withheld non-public information about an intelligence source that could potentially identify the source ...............................11

    A.   Exemption 3 ........................................................................................................12

    B.   Exemption 7(E) ...................................................................................................12

III. The Department of State properly withheld information about the issuance or refusal of a visa ............................................................................................................12

IV. The Department of State properly withheld Document 7 in full ......................................13

CONCLUSION......................................................................................................................

15

## INTRODUCTION

This is the Department of State's second motion for summary judgment in this Freedom of Information Act ("FOIA") case brought by Citizens United. Citizens United is seeking records from the Department about a 2016 meeting between an official of the Department and former British intelligence office Christopher Steele. The Department released records in response to the request, but withheld some information as exempt, mostly because of national security and law enforcement concerns. The Court granted in part and denied in part the Department's first motion for summary judgment, concluding that most of the Department's withholdings were well-justified, but finding that more detailed information was needed regarding others—specifically, certain redactions under Exemption 1, 3, and 7(E) from Documents 4 and 9. The Court also requested some clarification regarding the reasons that the Federal Bureau of Investigation ("FBI") asked the Department of State to withhold Document 7 in full. This renewed motion, and the accompanying supplemental declarations, provide the requested details and demonstrate that the Department of State is now entitled to summary judgment in full.

## BACKGROUND

Citizen United's FOIA request seeks records related to an October 2016 briefing between State Department officials and Christopher Steele, a former British intelligence officer. The request asks for "copies of all records relating to the . . . briefing . . . as described in" a certain news article, including:

> a) Participant lists b) Participant notes c) Briefing scheduling requests d) Minutes e) Transcripts f) Briefing materials g) Briefing location h) After-action reports [and] i) Audio or visual recordings

ECF No. 13-5 at 15. After Citizens United filed this lawsuit, the State Department located nine responsive records and released eight of them in full or in part and withheld one of them in full. Stein Decl. ¶ 50, ECF No. 13-5. The Department consulted with the Federal Bureau of

Investigation ("FBI") regarding these withholdings because records contain information related to the FBI and its activities. Seidel Decl. ¶ 6, ECF No. 13-4. Citizens United disputed the Department's withholding of information from five documents (3, 4, 6, 7, and 9), and the parties cross-moved for summary judgment.

The Court granted in part and denied in part Defendant's motion for summary judgment and denied Citizens United's motion for summary judgment. The Court concluded that "the Department permissibly withheld or redacted Documents 3, 6, and 7, but that it has yet to offer a sufficiently detailed explanation of its redactions to Documents 4 and 9." Mem. Op. at 4, ECF No. 21. Document 9 is eleven pages and consists of handwritten notes taken by Deputy Assistant Secretary Kathleen Kavalec of the Department of State during a meeting with Steele and Tatyanna Duran on October 11, 2016. Stein Decl. ¶ 48. Document 4 is two pages and consists of typed notes that Kavalec later created to document the meeting. *Id.* ¶ 40; 2d Seidel Decl. ¶ 5. The typed notes present a more cogent and fulsome description of the meeting. 2d Seidel Decl. ¶ 5. The Department redacted information from these two documents under Exemptions 1, 3, and 7(E), Seidel Decl. ¶¶ 42, 49, but the Court found that the information that the Department of State provided about the withheld information did not give the Court an adequate foundation to review the soundness of those withholdings, Mem. Op. at 17.

In addition, the Court concluded that more information was necessary for it to assess the segregability of Document 7. Mem. Op. at 21–23. A declarant for the FBI, which requested that the State Department withhold the document in full, stated that the information on every page of Document 7 was covered by FOIA exemptions, that any potentially nonexempt information was so intertwined with exempt information that it could not reasonably be segregated for release, and that doing so would result only in the release of disjointed word or sentences that taken separately

or together would have "minimal or no information content.' Seidel Decl. ¶ 50. The Court, however, concluded that, though it was a "close question," this explanation was insufficient because it was "relatively conclusory," left the reader to wonder what the declarant meant by "minimal . . . informational content," and because the declarant seemed to leave open the possibility that entire sentences might be segregable. Mem. Op. at 22. The Court therefore provided the Department an opportunity to submit a supplemental declaration or to provide the document for in camera review. *Id.* at 22–23.

Following the Court's decision, the parties mutually proposed to file renewed motions for summary judgment on those open issues, ECF No. 22, and the Court entered a schedule for them to do so.

In the interim, the Department of State was informed by the FBI that additional information could be released from Document 4. The Department of State therefore re-released Document 4 with additional information unredacted on July 21, 2020. Weetman Dec. ¶ ; 2d Siedel Decl. ¶ 7(d) n.4.

## ARGUMENT

The only remaining issues in this case are the Department's redactions to Documents 4 and 9 and the segregability of any nonexempt information in Document 7. As for Documents 4 and 9, at the FBI's behest, the Department redacted one notation on the first page of Document 9 pursuant to Exemptions 3 and 7(E), and a couple of lines on the fifth page of Document 9, pursuant to Exemptions 1, 3, and 7(E).  SUMF ¶ 3. Also at the FBI's behest, the Department redacted what amounts to three blocks of information on the first page of Document 4.  SUMF ¶ 4. The first two redaction blocks are adjacent to one another at the top of the page; the first was protected pursuant to Exemptions 3 and 7(E) and the second pursuant to Exemptions 1, 3, and 7(E). *Id.* The third

redaction is further down on the page and was made pursuant to Exemptions 3 and 7(E). *Id.* In addition, the Department of State redacted some information related to the issuance or denial of a visa pursuant to Exemption 3. As for Document 7, the FBI requested that State withhold the document in full under Exemptions 3 and 7(E). As explained below, all of these withholdings are well supported.

### I. The Department of State properly withheld non-public information about the engagement of an intelligence source.

The redaction on page 5 of Document 9 corresponds to the second redaction block on Document 4. SUMF ¶ 5. The redacted content is non-public information about the engagement of an intelligence source (Steele) by the FBI, including where and when that engagement occurred. *Id.* The Department of State, with input from the FBI, properly redacted this information pursuant to Exemptions 3, 1, and 7(E). The Court may enter summary judgment in favor of the Department if it finds any one of these exemptions to be proper. *See Cause of Action Inst. v. U.S. Dep't of Justice*, 330 F. Supp. 3d 336, 351–52 (D.D.C. 2018) (observing that an agency "may withhold documents or portions thereof as long as" one of two invoked exemptions apply); *see also Simon v. Dep't of Justice*, 980 F.2d 782, 785 (D.C. Cir. 1992) (finding records exempt from FOIA under one exemption and declining to address any other).

#### A. Exemption 3

The Department of State, on the FBI's behalf, invoked Exemption 3 to withhold the redacted information because it is exempt from disclosure by the National Security Act. Exemption 3 applies to matters "specifically exempted from disclosure by statute . . . [provided that such statute] (i) requires that matters be withheld from the public in such a manner as to leave no discretion on the issue; or (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld." 5 U.S.C. § 552(b)(3). "Exemption 3 differs from other FOIA

exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for the decision is the existence of a relevant statute and the inclusion of withheld material within that statute's coverage." *Goland v. CIA*, 607 F.2d 339, 350–51 (D.C. Cir. 1978). Consequently, under Exemption 3, judicial review is limited to whether (1) the withholding statute qualifies as an Exemption 3 statute, and (2) the withheld material satisfies the criteria of the exemption statute. *See CIA v. Sims*, 471 U.S. 159, 167 (1985); *Fitzgibbon v. CIA*, 911 F.2d 755, 761 (D.C. Cir. 1990). Further, "substantial weight [is] owed to agency explanations in the context of national security, to qualify for withholding under Exemptions 1 and 3." *Students Against Genocide v. Dep't of State*, 257 F.3d 828, 840 (D.C. Cir. 2001).

The National Security Act requires the Director of National Intelligence, and by extension each component of the intelligence community, to safeguard information concerning intelligence sources and methods. *See* 50 U.S.C. § 3024(i)(1) (formerly 50 U.S.C. § 403). Courts have recognized that this statute falls within the ambit of Exemption 3. Mem. Op. at 5–6; *see also, e.g., Krikorian*, 984 F.2d at 465 ("It is well settled that section [3024(i)(1)] falls within exemption 3."). Pursuant to the National Security Act, the Director of National Intelligence has signed Intelligence Community Directive 700, which requires members of the Intelligence Community, including the FBI, to protect "national intelligence and intelligence sources and methods and activities from unauthorized disclosure." Intelligence Community Directive 700 (June 7, 2012).[1]

If disclosed, this information would reveal non-public information about the FBI's engagement with an intelligence source, which is an intelligence method that the National Security Act of 1947 requires the FBI, as a member of the Intelligence Community, to protect from disclosure. SUMF ¶ 6. Further, the fact that Steele's identity as the intelligence source may not be

---

[1] Available at https://www.dni.gov/files/documents/ICD/ICD_700.pdf.

5

confidential does not remove that information from being within the purview of the National Security Act. As the Supreme Court has recognized, "Congress [did not] state that only confidential or nonpublic intelligence sources are protected. [The statute] contains no such limiting language." *Sims*, 471 U.S. at 169; *see also Fitzgibbon v. CIA*, 911 F.2d 755, 762 (D.C. Cir. 1990) ("[T]he fact that the District Court at one point concluded that certain contacts between CIA and the foreign officials were 'nonsensitive' does not help Fitzgibbon because apparently innocuous information can be protected and withheld."). The Department therefore properly withheld this information under Exemption 3.

      B.      <u>Exemption 1</u>

Exemption 1 protects from disclosure records that are "(A) specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy and (B) are in fact properly classified pursuant to such Executive order." 5 U.S.C. § 552(b)(1). An agency establishes that it has properly withheld information under Exemption 1 if it shows that the information meets the classification requirements of the Executive Order in effect at the time that the final classification action was taken. *Campbell v. U.S. Dep't of Justice*, 164 F.3d 20, 29 (D.C. Cir. 1998). As explained by the D.C. Circuit, "Exemption 1 in this way establishes a specific exemption for defense and foreign policy secrets, and delegates to the President the power to establish the scope of that exemption by executive order." *Military Audit Project v. Casey*, 656 F.2d 724, 737 (D.C. Cir. 1981).

The information at issue here was classified pursuant to E.O. 13526, 75 Fed. Reg. 707 (Dec. 29, 2009). SUMF ¶ 7. Under E.O. 13526, information may be classified if it meets four requirements: (1) an original classification authority classifies the information; (2) the information is owned, produced by or for, or under the control of the United States government; (3) the

information falls within one or more of the protected categories listed in section 1.4 of the Order; and (4) the original classification authority determines that unauthorized disclosure of the information reasonably could be expected to result in a specified level of damage to the national security, and the original classification authority is able to identify or describe such expected damage. E.O. 13526 § 1.1(a). Of the eight classification categories listed in section 1.4, only one is relevant here: "intelligence activities (including covert action), intelligence sources or methods, or cryptology," § 1.4(c). E.O. 13526, § 1.4, 75 Fed. Reg. at 708.

Given the significance of classified information, courts are particularly respectful of classification decisions by the executive branch and afford those decisions "substantial weight." *Weissman v. CIA*, 565 F.2d 692, 697 n.10 (D.C. Cir. 1977); *see also Larson v. Dep't of State*, 565 F.3d 857, 864 (D.C. Cir. 2009); *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007); *Krikorian v. Dep't of State*, 984 F.2d 461, 464 (D.C. Cir. 1993); *Baez v. U.S. Dep't of Justice*, 647 F.2d 1328, 335 (D.C. Cir. 1980); *Lesar v. U.S. Dep't of Justice*, 636 F.2d 472, 481 (D.C. Cir. 1980); *Military Audit Project*, 656 F.2d at 738; *Mobley v. Dep't of Justice*, 870 F. Supp. 2d 61, 67 (D.D.C. 2012). Moreover, courts generally find it inappropriate to substitute their judgment for that of the executive with regard to classified information. *See Larson*, 565 F.3d at 865; *Halperin v. CIA*, 629 F.2d 144, 148 (D.C. Cir. 1980). As the D.C. Circuit has explained, "the text of Exemption 1 itself suggests that little proof or explanation is required beyond a plausible assertion that information is properly classified." *Morley v CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007).

The redacted information was determined to be an intelligence source and method that is classified by an FBI Original Classification Authority. SUMF ¶ 7. Executive Order 13526 § 1.4(c) authorizes the classification of "intelligence activities (including covert action), intelligence sources or methods, or cryptology." As explained above, the information redacted on page 5 of

Document 9 and in the second redaction block of Document 4 is intelligence-method information about the FBI's engagement with an intelligence source. SUMF ¶ 8. The FBI concluded that disclosure of this intelligence source and method information could reasonably be expected to cause serious damage to national security. SUMF ¶ 9. Pieces of information like this about how or where the FBI engaged an intelligence source could be used, along with other publicly-available information about this and other sources, to form a mosaic picture about the FBI's engagement with intelligence sources that could be exploited to undermine FBI in source interactions in the future. SUMF ¶ 10; *see also Sims*, 471 U.S. at 178 (holding that the Director of the CIA has power to withhold superficially innocuous information on the grounds that it might enable an observer to discover the identity of an intelligence source). This is true whether the information in the public domain is the result of official agency disclosures or as a result of disclosures by entities other than the agency or even leaks of information.  SUMF ¶ 11. Accordingly, the FBI concluded that this information is currently and properly classified at the SECRET level pursuant to E.O. 13526 § 1.4(c). SUMF ¶ 12.

      C.     Exemption 7(E)

Among other things, Exemption 7 allows agencies to withhold

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

5 U.S.C. § 552(b)(7).

For any part of Exemption 7 to apply, an agency must first demonstrate that the records it withheld were compiled for law-enforcement purposes. *See FBI v. Abramson*, 456 U.S. 615, 622 (1982). Courts assume that a "criminal law enforcement agency[s']" records were for law

8

enforcement purposes because government agencies "typically go about their intended business," and courts apply a "more deferential attitude toward [their] claims of 'law enforcement purpose.'" *Pratt v. Webster*, 673 F.2d 408, 418–19 (D.C. Cir. 1982). In light of that deference, the D.C. Circuit has opined that a law-enforcement agency need only show that the nexus between the activity in question and its law-enforcement duties "be based on information sufficient to support at least 'a colorable claim' of its rationality." *Keys v. U.S. Dep't of Justice*, 830 F.2d 337, 340 (D.C. Cir. 1987) (quoting *Pratt*, 673 F.2d at 421).

The FBI is without a doubt a law-enforcement agency. Pursuant to 28 U.S.C. §§ 533 and 534, Executive Order 12,333 as implemented by the Attorney General's Guidelines for Domestic FBI Operations, and 28 C.F.R. § 0.85, the FBI is the primary investigative agency of the federal government, with authority and responsibility to investigate all violations of federal law not exclusively assigned to another agency; to conduct investigations and activities to protect the United States and its people from terrorism and threats to national security; and to further the foreign intelligence objectives of the United States. *See also Abdeljabbar v. Bureau of Alcohol Tobacco & Firearms*, 74 F. Supp. 3d 158, 178 (D.D.C. 2014) (holding that the FBI is a law-enforcement agency).

The FBI has presented at least a "colorable claim" that there is a rational nexus between the records in question and law-enforcement activity. *See Keys*, 830 F.2d at 340. The information that the FBI requested withheld derives from the Bureau's investigative activities and/or duplicate information in FBI records, which was compiled during the FBI's investigations of national security matters. 1st SUMF ¶ 21. Therefore, the information readily meets the threshold requirement of Exemption 7.

Exemption 7(E) permits agencies to withhold law enforcement records that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E). Courts have reached differing conclusions as to whether the first clause of Exemption 7(E)—protecting techniques and procedures for law enforcement investigations or prosecutions—requires a showing that disclosure could risk circumvention of the law. *See PEER v. U.S. Section, Int'l Boundary & Water Comm'n, U.S.-Mexico*, 740 F.3d 195, 205 n.4 (D.C. Cir. 2014). The presence of the comma between the clause about "law enforcement investigation or prosecutions" and the conjunction preceding the clause about "guidelines for law enforcement investigations" indicates that the "risk circumvention" requirement, which directly follows the guidelines phrase, applies only to the disclosure of guidelines and that no such showing is required where techniques and procedures are involved. *See Allard K. Lowenstein Int'l Human Rights Project v. Dep't of Homeland Sec.*, 626 F.3d 678, 681 (2d Cir. 2010) ("[B]asic rules of grammar and punctuation dictate that the qualifying phrase modifies only the immediately antecedent 'guidelines' clause and not the more remote 'techniques and procedures' clause."); *see also id.* (noting that the history of the statutes amendments support this reading as well). The D.C. Circuit has applied the "risk circumvention" requirement to disclosures of techniques and procedures, but without analysis or explicit rejection of any other interpretation. *See Blackwell v. FBI*, 646 F.3d 37, 41–42 (D.C. Cir. 2011). In any event, as the D.C. Circuit has noted, "given the low bar posed by the 'risk circumvention of the law' requirement, it is not clear that the difference matters much in practice." *PEER*, 740 F.3d at 205 n.4. Indeed, the Court has noted that information may be withheld "not just for circumvention of the law, but for a risk of circumvention; not just for an actual or certain risk

10

of circumvention, but for an expected risk; not just for an undeniably or universally expected risk, but for a reasonably expected risk; and not just for certitude of a reasonably expected risk, but for the chance of a reasonably expected risk." *Mayer Brown LLP v. IRS*, 562 F.3d 1190, 1193 (D.C. Cir. 2009); *see also Blackwell*, 646 F.3d at 42 (noting that exemption 7(E) offers "a relatively low bar for the agency to justify withholding" information).

Here, the FBI's engagement with Steele as an intelligence source was in relation to a then-ongoing national security investigation. SUMF ¶ 13. Accordingly, disclosure of the information would also reveal non-public details about the FBI's reliance on sources in national security investigations. SUMF ¶ 14. While the FBI's use of sources, including intelligence sources, in national security investigations is a known investigative technique, the information protected here would reveal non-public details about the FBI's utilization of this investigative technique. SUMF ¶ 15. Such information, combined with other publicly available information about the technique, could be used by adversaries and other hostile actors to develop methods of identifying the FBI's sources as well as other measures designed to counteract the effectiveness of this crucial investigative technique. SUMF ¶ 16.

**II.     The Department of State properly withheld non-public information about an intelligence source that could potentially identify the source.**

The redaction on page 1 of Document 9 and the third redaction block on Document 4 similarly correspond with one another. SUMF ¶ 17. The redacted information is non-public information about an intelligence source (not Steele) that could potentially identify the source. *Id.* Additionally, the information redacted in the first block on Document 4 includes a description of this intelligence source, including profession, location, and contacts that could potentially identify the source. SUMF ¶ 18.

11

A.  Exemption 3

The National Security Act of 1947 requires the protection of intelligence sources and methods, regardless of whether they are classified. 50 U.S.C. § 3024(i)(1); *see also Talbot v. U.S. Dep't of State*, 315 F. Supp. 3d 355, 373 (D.D.C. 2018) (rejecting argument that unclassified information may not be withheld under Exemption 3 and the National Security Act). Since this information is about an intelligence source, and could identify the source, the FBI was required to protect it. SUMF ¶ 19.

B.  Exemption 7(E)

Additionally, as with the information about Steele discussed above, the information about this intelligence source was in relation to a then-ongoing national security investigation, and disclosure of the information would also reveal non-public details about the FBI's reliance on sources in national security investigations. SUMF ¶ 20. As described above, this technique is not itself unknown to the public but the non-public information protected here could be combined with other publicly-available information about the technique and then used by adversaries and other hostile actors to develop methods of identifying FBI sources as well as other measures designed to counteract the effectiveness of this crucial investigative technique. SUMF ¶ 21.

**III.  The Department of State properly withheld information about the issuance or refusal of a visa.**

For its own part, State withheld certain information from Document 4 under the Immigration and Nationality Act. Section 222(f) of the Immigration and Nationality Act provides:

> The records of the Department of State and of diplomatic and consular offices of the United States pertaining to the issuance or refusal of visas or permits to enter the United States shall be considered confidential and shall be used only for the formulation, amendment, administration, or enforcement of the immigration, nationality, and other laws of the United States, except that in the discretion of the Secretary of State certified copies of such records may be made available to a court which certifies that the information

> contained in such records is needed by the court in the interest of the ends of justice in a case pending before the court.

8 U.S.C. § 1202(f) (emphasis added). The D.C. Circuit has recognized that this provision of the Immigration and Nationality Act qualifies as a withholding statute under Exemption 3. *Medina-Hincapie v. Dep't of State*, 700 F.2d 737, 741 (D.C. Cir. 1983). Section 222(f) applies not only to the information supplied by the visa applicant, but also to "information revealing the thought-processes of those who rule on the application" and "records pertaining to the approval or denial of the application." *Id.* at 744 & n.36 (emphasis removed). Pursuant to this provision, State withheld a sentence in Document 4 that describes specific details pertaining to the issuance of an individual's visa. SUMF ¶ 22. This information is properly withheld under Exemption 3. *See Medina-Hincapie*, 700 F.2d at 744.

**IV.     The Department of State properly withheld Document 7 in full.**

Document 7 is a research document prepared by a third party related to a technical issue. SUMF ¶ 23. The document was not prepared at the request of the FBI or in response to a tasking from the FBI. SUMF ¶ 25. The document became known to a third party who had access to it and who supplied it to the Department of State. SUMF ¶ 26. The Department, in turn, supplied the document to the FBI because the subject matter related to the FBI's investigation into Russian interference in the 2016 Presidential election. SUMF ¶ 27. Document 7 is a printout directly from this limited access website (not accessible to the general public) and pertains to a subject matter that DOS recognized to be of counterintelligence interest to the FBI. SUMF ¶ 28.

The FBI concluded that no portion of the five-page document can be disclosed because the entire document is exempt pursuant to Exemption 3. That is, the entire document is intelligence information, which if disclosed would reveal non-public information about the intelligence/investigative method—i.e., the specific research at issue. SUMF ¶ 29. Moreover,

disclosure of the specific information on the pages would significantly narrow down the identity of the source who supplied the information to the Department of State, thus risking the revelation of the intelligence source.  SUMF ¶ 30.

Although the FBI appeared to indicate in the first Seidel declaration that certain innocuous pieces of information from the document could be released but were not because FOIA does not require agencies to release disjointed words or phrases that would have minimal or no informational content, that statement was meant to convey only that there may be random words or phrases—such as "for example," "in conclusion," "and," "the," "however," "thus," etc.—that standing entirely on their own would not be exempt but that provide no informational content and thus are not reasonably segregable. SUMF ¶ 31. To clarify, the FBI concluded that the cited exemptions protect the document and its contents in full and that there is no non-exempt information in this document for the FBI to reasonably segregate and release.  SUMF ¶ 32. The whole document is intelligence information and disclosure of any portion of it risks revealing exempt information such as the location and source of the original information and the specific technical data of interest to the FBI in its investigation into Russian interference in the 2016 Presidential election. SUMF ¶ 33.

*   *   *

## CONCLUSION

The Court should enter summary judgment in favor of Defendant.

Dated: July 27, 2020                  Respectfully submitted,

MICHAEL R. SHERWIN
Acting United States Attorney

DANIEL F. VAN HORN, D.C. Bar #924092
Chief, Civil Division

By:   /s/ Johnny Walker
JOHNNY H. WALKER, D.C. Bar #991325
Assistant United States Attorney
555 4th Street, N.W.
Washington, District of Columbia 20530
Telephone: 202 252 2575
Email: johnny.walker@usdoj.gov

*Counsel for Defendant*