IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS UNITED, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. A. No. 18-1862 (RDM) |
| ) | |
| UNITED STATES ) | |
| DEPARTMENT OF STATE, ) | |
| ) | |
| Defendant. ) | |

## SECOND DECLARATION OF MICHAEL G. SEIDEL

I, Michael G. Seidel, declare as follows:

(1) I am the Section Chief of the Record/Information Dissemination Section (RIDS), Information Management Division (IMD), Federal Bureau of Investigation (FBI), Winchester, Virginia. I served as the Acting Section Chief from May 26, 2020 until my appointment to Section Chief on July 27, 2020. I joined the FBI in September 2011, and prior to my current position, I was the Assistant Section Chief of RIDS from June 2016 to May 2020; Unit Chief, RIDS Litigation Support Unit from November 2012 to June 2016; and an Assistant General Counsel, FBI Office of General Counsel, Freedom of Information Act (FOIA) Litigation Unit, from September 2011 to November 2012. In those capacities, I had management oversight or agency counsel responsibility for FBI FOIA and Privacy Act (PA) litigation cases nationwide. Prior to my joining the FBI, I served as a Senior Attorney, U.S. Drug Enforcement Administration (DEA) from September 2006 to September 2011, where among myriad legal responsibilities, I advised on FOIA/PA matters and served as agency counsel representing the DEA in FOIA/PA suits nationwide. I also served as a U.S. Army Judge Advocate General's

Corps Officer in various assignments from 1994 to September 2006, culminating in my assignment as Chief, General Litigation Branch, U.S. Army Litigation Division, where I oversaw FOIA/PA litigation for the U.S. Army. I am an attorney registered in the State of Ohio and the District of Columbia.

(2) In my official capacity as Section Chief of RIDS, I supervise approximately 243 FBI employees, supported by approximately 91 contractors, who staff a total of twelve (12) Federal Bureau of Investigation Headquarters (FBIHQ) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA as amended by the OPEN Government Act of 2007, the OPEN FOIA Act of 2009, and the FOIA Improvement Act of 2016; the Privacy Act of 1974; Executive Order 13526; Presidential, Attorney General, and FBI policies and procedures; judicial decisions; and Presidential and Congressional directives. My responsibilities as Section Chief also include the review of FBI information for classification purposes as mandated by Executive Order 13526, 75 Fed. Reg. 707 (Dec. 29, 2009), and the preparation of declarations in support of Exemption 1 claims asserted under the FOIA. The Section Chief, RIDS has been designated by the Attorney General of the United States as an original classification authority and a declassification authority pursuant to Executive Order 13526, §§ 1.3 and 3.1. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3) Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to requests for information from its files pursuant to the provisions of

2

the FOIA, 5 U.S.C. § 552. Specifically, I am aware of the Department of State's (DOS's) consultation to the FBI seeking review of FBI information/equities within six documents located by DOS in responding to plaintiff's FOIA request at issue in this lawsuit. This declaration incorporates by reference my first declaration filed July 10, 2019. *See* ECF No. 13-4, Declaration of Michael G. Seidel ("First Seidel Declaration"). It also incorporates by reference information provided in the declaration of David Hardy, filed August 1, 2019. *See* ECF No. 18-1, Declaration of David M. Hardy ("Hardy Declaration"). In the Court's Memorandum Opinion dated May 19, 2020, the Court requested Defendant provide a supplemental declaration addressing two areas: (1) further explaining the application of FOIA Exemptions 1, 3, and 7(E) to withhold certain blocks of information on three pages from two documents (identified in this litigation as Documents 4 and 9); and (2) why no information can be segregated for release from a third document (identified in this litigation as Document 7). *See* ECF No. 21, Memorandum Opinion, p. 19-20 and 22-23.

(4) This supplemental declaration seeks to provide additional detail concerning these three documents.[1] The three documents at issue and the specific location of information previously supplied in the First Seidel Declaration and the Hardy Declaration are summarized in the following chart. Additional information supporting the FBI's withholding and segregability decisions with respect to these documents is provided in the paragraphs that follow.

---

[1] If after reviewing the FBI's supplemental declaration the Court determines an *in camera* review of the documents to be necessary, the FBI is prepared to supply the court with an unredacted copy of the records at issue.

3

| FBI'S DISPOSITION OF ITS INFORMATION/EQUITIES IN DOS CONSULTATION RECORDS ||||||
|---|---|---|---|---|---|
| Doc # | Description | Page # | Issue | FBI Disposition[2] | Cross-Reference to Prior FBI Declarations |
| Document 4 C06679743 | Two page typewritten notes of meeting between Christopher Steele and Tatyana Duran of Orbis Security, and Kathleen Kavalec of DOS | 1 | Applicability of Exemptions | RIP (b)(1) (b)(3) (b)(7)(E) | First Seidel Decl. ¶¶ 15-27, 31-37, 45-46. |
| Document 9 C06751858 | 11-pages of handwritten notes by Kathleen Kavalec, DOS, from her meeting with Christopher Steele and Tatyana Duran of Orbis Security | 1 | Applicability of Exemptions | RIP (b)(3) (b)(7)(E) | First Seidel Decl. ¶¶ 31-35, 36-37, 45-46. |
| | | 5 | | RIP (b)(1) (b)(3) (b)(7)(E) | First Seidel Decl. ¶¶ 15-37, 45-46. |
| Document 7 C06682575 | Five page attachment to the e-mail C06682574 | 1-5 | Segregability | No Segregable Information | Hardy Decl. ¶ 7 First Seidel Decl. ¶¶ 7, 50-51 |

---

[2] RIP = released in part; WIF = withheld in full

## WITHHOLDING DECISIONS REGARDING DOCUMENTS 4 AND 9

(5)     These two documents are handwritten notes taken by Kathleen Kavalec, DOS, at a meeting with Christopher Steele and Orbis Security (Document 9), and the typewritten version she later created to document that meeting (Document 4). The typewritten version is a more cogent, fulsome description of the meeting.

(6)     At FBI's behest, DOS redacted one notation on the first page of Document 9 pursuant to Exemptions 3 and 7(E), and a couple of lines on the fifth page of Document 9, pursuant to Exemptions 1, 3, and 7(E). At FBI's behest, DOS also redacted what amounts to three blocks of information on the first page of Document 4. The first two redaction blocks are adjacent to one another at the top of the page; the first was protected pursuant to Exemptions 3 and 7(E) and the second pursuant to Exemptions 1, 3, and 7(E).[3] The third redaction is further down on the page and was made pursuant to Exemptions 3 and 7(E).

(7)     The redaction on page 5 of Document 9 corresponds to the second redaction block on Document 4. The redacted information is non-public information about the engagement of an intelligence source (Steele) by the FBI, including where and when that engagement occurred. The information on these pages was protected pursuant to Exemptions 1, 3, and 7(E) for the following reasons:

(a)     <u>Exemption 3</u>:   If disclosed, this information would reveal non-public information about the FBI's engagement with an intelligence source, which is an intelligence

---

[3] This information, which relates to the engagement of an intelligence source (Steele), was also withheld in Document 3, within the body of the second email dated September 30, 2016. *See* Memorandum Opinion, p. 10-16.

method that the National Security Act of 1947 requires the FBI, as a member of the Intelligence Community, to protect from disclosure.

(b) Exemption 1: This intelligence source and method information was also determined to be classified by an FBI Original Classification Authority. E.O. 13526 § 1.4(c) authorizes the classification of "intelligence activities (including covert action), intelligence sources or methods, or cryptology." As explained in the previous paragraph, the information redacted on page 5 of Document 9 and in the second redaction block of Document 4 is intelligence method information about the FBI's engagement with an intelligence source. The FBI concluded that disclosure of this intelligence source and method information could reasonably be expected to cause serious damage to national security. Pieces of information like this about how or where the FBI engaged an intelligence source could be used, along with other publicly-available information about this and other sources, to form a mosaic picture about the FBI's engagement with intelligence sources that could be exploited to undermine FBI in source interactions in the future. This is true whether the information in the public domain is the result of official agency disclosures or as a result of disclosures by entities other than the agency or even leaks of information. Accordingly, the FBI concluded that this information is currently and properly classified at the SECRET level pursuant to E.O. 13526 § 1.4(c).[4]

(c) Exemption 7(E): Finally, the FBI's engagement with Steele as an intelligence source was in relation to a then-ongoing national security investigation.

---

[4] The National Security Act of 1947 protects intelligence source and method information regardless of whether it is classified. Accordingly, even if this information was not currently and properly classified pursuant to § 1.4(c), it would nevertheless be exempt from disclosure pursuant to Exemption 3.

Accordingly, disclosure of the information would also reveal non-public details about the FBI's reliance on sources in national security investigations. While the FBI's use of sources, including intelligence sources, in national security investigations is a known investigative technique, the information protected here would reveal non-public details about the FBI's utilization of this investigative technique. Such information, combined with other publicly available information about the technique, could be used by adversaries and other hostile actors to develop methods of identifying the FBI's sources as well as other measures designed to counteract the effectiveness of this crucial investigative technique.

(d) For the foregoing reasons, the FBI properly protected the information redacted on page 5 of Document 9 (C06751858) and in the second redaction block of Document 4 (C06679743) pursuant to Exemptions 1, 3, and 7(E).[5]

(8) The redaction on page 1 of Document 9 and the third redaction block on Document 4 similarly correspond with one another. The redacted information is non-public information about an intelligence source (not Steele) that could potentially identify the source. Additionally, the information redacted in the first block on Document 4 includes a description of this intelligence source, including profession, location, and contacts that could potentially identify the source. All of the preceding information was redacted pursuant to Exemptions 3 and 7(E) for the following reasons:

---

[5] Upon further review, the FBI concluded that there was a small amount of information that is no longer exempt and could be segregated for release to plaintiff. The FBI advised DOS so that it could modify the processing and provide an updated version to plaintiff.

7

(a) <u>Exemption 3</u>:   The National Security Act of 1947 requires the protection of intelligence sources and methods, regardless of whether they are classified.   Since this information is about an intelligence source, and could identify the source, the FBI was required to protect it.

(b) <u>Exemption 7(E)</u>:   Additionally, as with the information about Steele discussed above, the information about this intelligence source was in relation to a then-ongoing national security investigation, and disclosure of the information would also reveal non-public details about the FBI's reliance on sources in national security investigations.   As described above, this technique is not itself unknown to the public but the non-public information protected here could be combined with other publicly-available information about the technique and then used by adversaries and other hostile actors to develop methods of identifying FBI sources as well as other measures designed to counteract the effectiveness of this crucial investigative technique.

(c) For the foregoing reasons, the FBI properly protected the information redacted on page 1 of Document 9 (C06751858) and in the first and third redaction blocks of Document 4 (C06679743) pursuant to Exemptions 3 and 7(E).

## SEGREGABILITY OF DOCUMENT 7

(9) The FBI asked DOS to withhold Document 7 in full pursuant to Exemptions 3 and 7(E).   The Court's Memorandum Opinion found that the defendant lawfully withheld Document 7 under Exemption 3.   *See* ECF 21, Memorandum Opinion, at p. 4 and 9.   Nevertheless, this Court expressed hesitancy about the language used by the FBI "to explain why no meaningful,

8

non-exempt information in Document 7 could not be segregated and released," and so requested further briefing on the issue. *Id.* at 22-23.

(10)    As explained in my first declaration, Document 7 is a research document prepared by a third party related to a technical issue. *See* ECF No. 13-4, First Seidel Declaration, at ¶ 7. The document was not prepared at the request of the FBI or in response to a tasking from the FBI. The document became known to a third party who had access to it and who supplied it to DOS. DOS, in turn, supplied the document to the FBI because the subject matter related to the FBI's investigation into Russian interference in the 2016 Presidential election. Document 7 is a printout directly from this limited access website (not accessible to the general public) and pertains to a subject matter that DOS recognized to be of counterintelligence interest to the FBI.

(11)    The FBI concluded that no portion of the five-page document can be disclosed because the entire document is exempt pursuant to Exemption 3. That is, the entire document is intelligence information, which if disclosed would reveal non-public information about the intelligence/investigative method - *i.e.*, the specific research at issue. Moreover, disclosure of the specific information on the pages would significantly narrow down the identity of the source who supplied the information to DOS, thus risking the revelation of the intelligence source.

(12)    Although the FBI appeared to indicate in the First Seidel Declaration that certain innocuous pieces of information from the document could be released but were not because FOIA does not require agencies to release disjointed words or phrases that would have minimal or no informational content, I realize that may have caused confusion in context. That statement was meant to convey only that there may be random words or phrases – such as "for example,"

9

"in conclusion," "and," "the," "however," "thus," etc. – that standing entirely on their own would not be exempt but that provide no informational content and thus are not reasonably segregable.

(13) To clarify, the FBI concluded that the cited exemptions protect the document and its contents in full and that there is no non-exempt information in this document for the FBI to reasonably segregate and release. The whole document is intelligence information and disclosure of any portion of it risks revealing exempt information such as the location and source of the original information and the specific technical data of interest to the FBI in its investigation into Russian interference in the 2016 Presidential election.

(14) Accordingly, Document 7 (C06682575) was withheld in its entirety pursuant to FOIA Exemptions 3 and 7(E), and there is no non-exempt information to reasonably segregate for release.

## CONCLUSION

(15) For the reasons above, the FBI properly protected information in Documents 4 and 9 pursuant to Exemptions 1, 3, and 7(E), and properly concluded that there was no non-exempt information in Document 7 to reasonably segregate and release to plaintiff.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 27TH day of July, 2020.

*[signature]*

MICHAEL G. SEIDEL
Section Chief
Record/Information Dissemination Section
Information Management Division
Federal Bureau of Investigation
Winchester, Virginia