IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| CITIZENS UNITED, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 18-1862-RDM |
| | ) | |
| UNITED STATES DEPARTMENT OF STATE, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES
IN OPPOSITION TO DEFENDANT'S RENEWED
<u>MOTION FOR SUMMARY JUDGMENT</u>**

<u>INTRODUCTION</u>

This Court's May 19, 2020 Memorandum Opinion granting in part and denying in part the defendant's cross-motion for summary judgment ordered the defendant to provide a more detailed explanation of partial withholdings on Documents 4 and 9. With respect to Document 7, which was withheld in full, the Court ordered defendant to provide a supplemental declaration regarding segregability or in the alternative to submit the document for *in camera* review. On July 27, 2020, defendant filed a renewed motion for summary judgment ("MSJ"), seeking to resolve the remaining issues.

2

**ARGUMENT**

I.   **DOCUMENTS 4 AND 9 SHOULD BE PROVIDED TO THE COURT FOR *IN CAMERA* REVIEW.**

   A.   **Documents Evidencing the Engagement of Christopher Steele Should Be Reviewed by the Court *In Camera*.**

Defendant now explains that some of its redactions on Documents 4 and 9 relate to "non-public information about the engagement of an intelligence source (Steele) by the FBI, including where and when that engagement occurred."  MSJ at 4.  Plaintiff acknowledges, with respect to the exemptions claimed, deference is provided by courts to government declarations explaining the content of documents, but here there are other factors.

There is already public information regarding Steele's "engagement" by the FBI.  The FBI uses the term "engagement" but public records reveal confusion about the true nature of the relationship.  On one hand, the FBI said Steele was a CHS ("confidential human source); on the other hand, Steele said it was a contractual relationship. *See* OIG Report at 88.  Either way, the FBI has acknowledged that the relationship was "unorthodox and groundbreaking." *Id*.

Plaintiff urges the Court to deny the motion for summary judgment and direct the defendant to provide the documents for *in camera* review to ensure that the withheld information is not similar to what has already been disclosed in the DOJ OIG Report on FISA abuse and are properly being withheld.  The Second Seidel Declaration indicates that the FBI stands ready to provide the unredacted documents to the Court for *in camera* review if the Court so desires.  Plaintiff submits that *in camera* review of these brief passages would quickly resolve the current issues in this case.

3

**B.     The Information about the Third-party Intelligence Source Should Be Reviewed by the Court *In Camera*.**

Defendant also renews its withholding of two related portions of Documents 4 and 9 under Exemptions 3 and 7(E) to protect "non-public information about an intelligence source." MSJ at 11-12.  Plaintiff does not believe that the protection of intelligence sources extends to the protection of persons pushing political opposition research about a presidential candidate in an effort to influence a presidential election.  Accordingly, plaintiff urges the Court to conduct an *in camera* review of the two brief redactions to ensure that the redactions are being properly withheld.

**II.     THE COURT SHOULD REQUIRE DOCUMENT 7 BE PRESENTED FOR *IN CAMERA* REVIEW.**

The Court's Memorandum Opinion identified three reasons why defendant had not, at that point, borne its burden to demonstrate that no meaningful, non-exempt information in Document 7 could be segregated and released.  Defendant's renewed motion and declarations attempt to supplement prior filings to address the Court's concerns.  However, defendant's filings actually raise new questions that must be answered before the Court is able to make a proper determination.  At this point, plaintiff believes the best approach is for the Court to review Document 7 *in camera*.

Defendant now explains that Document 7:

- is a research document;
- was prepared by a third party, and not at the request or tasking of the FBI;
- is about a technical issue;
- was acquired by a different third party;
- comes from a limited access website, not accessible to the general public; and
- is related to the FBI's investigation into Russian interference in the 2016 Presidential election.  [MSJ at 13-14.]

4

The FBI continues to claim that the entire document is exempt pursuant to Exemption 3 because it would reveal "the specific research at issue" and would risk "revelation of the intelligence source." MSJ at 13-14. However, enough is now known to refute the FBI's claims.

Document 7 appears to have been in the public domain since the fall of 2016. *See* Second Declaration of Jeremiah L. Morgan ("2d Morgan Decl.") ¶ 6. The document appears to have been the foundational basis for a news article posted on October 31, 2016, and the timing strongly indicates that its release to the press was intentionally designed to effect the outcome of the 2016 presidential election. *See* F. Foer, "Was a Trump Server Communicating with Russia?" Slate.com (Oct. 31, 2016). The timing of that news article clearly establishes that some, if not all, of the withheld information from Document 7 was never "non-public information" as the FBI claims, because it was provided to news outlets around the same time that it was submitted to the State Department.

Also contrary to the defendant's assertions, the DOJ OIG has publicly explained the nature of the research in Document 7:

> Two days after the meeting with Steele, Kavalec emailed an FBI CD Section Chief [Stephen Laycock] a document that Kavalec **received from [Jonathan] Winer** discussing allegations about a linkage between [Russian] Alfa Bank and the **Trump campaign**, a topic that was discussed at the October 11 meeting. Kavalec advised the FBI Section Chief in the email that the information related to an investigation that Steele's firm had been conducting. The Section Chief forwarded the document to SSA 1 the same day. [OIG report at 119 (Dec. 2019) (footnote omitted) (emphasis added).]

Document 7 apparently includes information purporting to analyze network logs between a presidential candidate's organization and a Russian bank. *See* 2d Morgan Decl. ¶ 3. Indeed,

5

the "specific research at issue" is no secret, but has been widely publicized since October 31, 2016.

Furthermore, the information being protected was, at best, inaccurate.  *See* 2d Morgan Decl. ¶ 4.  As the DOJ Inspector General concluded, "The FBI investigated whether there were cyber links between the Trump Organization and Alfa Bank, but had concluded by early February 2017 that there were no such links."  IG Report at 119, n.259.  *The New York Times* reported on November 1, 2016 that the information had been already determined to be not credible by the FBI and the broader intelligence community.[1]

Insofar as the five-page document contains some or all of the information in Exhibit B, that portion about the FBI's investigation is already available to the public, and does not disclose intelligence/investigative methods that are not already known to anyone with internet access and a web browser.  *See* 2d Morgan Decl. ¶ 5.  That information lost its non-public nature, and as such, that information is segregable.

With respect to revealing intelligence sources, it is known that some of the "research" connected to Document 7 was in the possession of an attorney with a law firm that represented the 2016 Democratic presidential nominee as early as the summer of 2016 — who testified that he had provided such similar information to the FBI in September 2016, prior to the State Department sending it to the FBI.[2]  Thus, if the third-party source that could be identified from

---

[1]  *See* E. Lichtblau & S.L. Myers, "Investigating Donald Trump, F.B.I. Sees No Clear Link to Russia," *The New York Times* (Nov. 1, 2016).

[2]  *See* House, Permanent Select Committee on Intelligence, Interview transcript (Dec. 18, 2017) at 54-57.

6

Document 7 is that attorney, then it would not reveal non-public information about whoever the intelligence source was that was trying to run political opposition research through the State Department.

Even though much is known about Document 7, it would have great significance for the American people to know exactly what information on the Trump campaign was being collected, used by, and shared by senior Obama administration officials in the United States State Department and distributed to peers, in the days immediately before the 2016 presidential election.  There is a keen public interest in knowing who interfered with the 2016 presidential election — both from outside the United States and from those who served at the highest levels of our federal government.

The Court should order the defendant to provide Document 7 for *in camera* review to determine for itself whether the government's assertions are accurate.  For the reasons above, it appears clear that at least some portion of the document is not exempt from disclosure under Exemption 3.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment should be denied, and the Court should order defendant to provide Documents 4, 7, and 9 in their entirety, to the Court for *in camera* review.

7

Respectfully submitted,


  /s/
Jeremiah L. Morgan
(D.C. Bar No. 1012943)
William J. Olson
(D.C. Bar No. 233833)
Robert J. Olson
(D.C. Bar No. 1029318)
William J. Olson, P.C.
370 Maple Avenue West, Suite 4
Vienna, VA 22180-5615
703-356-5070 (telephone)
703-356-5085 (fax)
wjo@mindspring.com (email)

*Counsel for Plaintiff*
CITIZENS UNITED

Dated: July 31, 2020