### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| CITIZENS UNITED,<br><br>       *Plaintiff*,<br><br>  v.<br><br>UNITED STATES DEPARTMENT OF STATE,<br><br>       *Defendant*. | Civil Action No. 18-1862 (RDM) |

### <u>MEMORANDUM OPINION</u>

This case concerns a Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, request submitted by Citizens United to the Department of State ("the Department") seeking records related to an October 2016 meeting between Department officials and Christopher Steele. *Citizens United v. Dep't of State*, 460 F. Supp. 3d 12, 15 (D.D.C. 2020) ("*Citizens United I*"). The Department has released four documents in full, released four documents with redactions, and withheld one document in full.  In the Court's prior opinion in this case, it denied Citizens United's motion for summary judgment and granted the Department's cross-motion for summary judgment as to most of the withholdings.  *Id.*  But the Court denied the Department's motion for summary judgment with respect to two of the partially redacted documents, concluding that the Department had failed to explain why the redactions were proper.  *Id.* at 24.  The Court also denied summary judgment with respect to the document withheld in full because the Department had failed to explain why no part of the document could be released.  *Id.* at 27.  Seeking to address these deficiencies, the Department has now filed a renewed motion for summary judgment, supported by supplemental declarations providing additional detail about the

withholdings.  Dkt. 24.  Citizens United opposes that motion and seeks *in camera* review of each

of the redacted materials.  Dkt. 25.  In light of the additional detail and explanation that the

Department has provided, the Court will **GRANT** the Department's renewed motion for

summary judgment.

## I.  BACKGROUND

Prompted by a press report that Steele "visited the State Department [in October 2016]

[and] brief[ed] officials" there, Citizens United sent the Department a FOIA request in June 2018

seeking records relating to that meeting.  *Citizens United I*, 460 F. Supp. 3d at 15 (quoting Dkt.

1-2 at 2).  After the Department failed to provide a timely, substantive response, Citizens United

brought this action to compel the release of responsive materials.  *Id.* at 16; Dkt. 1.  Several

months later, the Department informed Citizens United that it had located nine responsive

records, four of which it released in full, four of which it released with redactions, and one of

which it withheld in full.  *Citizens United I*, 460 F. Supp. 3d at 15; Dkt. 13-5 at 3 (1st Stein Decl.

¶¶ 8–10).  Because several of the documents included "FBI information/equities," the

Department consulted the FBI about those records and withheld some content at the FBI's

request.  Dkt. 13-4 at 3 (1st Seidel Decl. ¶ 6).  In June 2019, Citizens United moved for summary

judgment to compel the release of the withheld materials, Dkt. 11, and the Department cross-

moved for summary judgment, Dkt. 13.

The Court denied Citizens United's motion for summary judgment and granted partial

summary judgment in favor of the Department.  The Court denied the Department's motion for

summary judgment, however, with respect to Documents 4, 7, and 9.  Documents 4 and 9 are

notes from an October 11, 2016 meeting attended by Deputy Assistant Secretary of State

Kathleen Kavalec, Steele, and Tatyana Duran of Orbis Security.  *Citizens United I*, 460 F. Supp.

3d at 23; Dkt. 13-4 at 6 (*Vaughn* index).  The Department made redactions to both sets of notes.

Dkt. 11-6 at 18–19, 22, 26.  In support of these redactions, the Department invoked three FOIA

Exemptions: Exemption 1, which protects records authorized to be kept secret pursuant to

executive order, 5 U.S.C. § 552(b)(1); Exemption 3, which protects records "exempted from

disclosure by statute," *id.* § 552(b)(3); and Exemption 7(E), which protects records "compiled for

law enforcement purposes," the disclosure of which would reveal "techniques and procedures for

law enforcement investigations or prosecutions" or would reveal guidelines that could allow

circumventing the law, *id.* § 552(b)(7)(E).  The Court concluded that the Department had "failed

to provide a sufficiently detailed explanation for these withholdings," and, indeed, "aside from

describing the documents," had failed to offer any "explanation or justification for its decisions."

*Citizens United I*, 460 F. Supp. 3d at 24.  That lack of detail prevented the Court from engaging

in the *de novo* review that FOIA requires.  The Court could not determine, for example, whether

the material withheld from Documents 4 and 9 is, in fact, "properly classified pursuant to an

executive order or whether [it] falls within the ambit of" a statute forbidding disclosure—as

relevant here, the National Security Act of 1947 as amended by the Intelligence Reform and

Terrorism Prevention Act of 2004, 50 U.S.C. § 3024(i)(1) (collectively, the "National Security

Act").  *Citizens United I*, 460 F. Supp. 3d at 24.

     The Court had different concerns about Document 7.  "Document 7 is 'a five-page

research document prepared by a third party (not Christopher Steele) about a technical subject,'"

containing "'potential leads of investigative interest to the FBI related to the investigation of

Russia's interference in the 2016 Presidential election.'"  *Id.* at 18 (quoting Dkt. 18-1 at 4 (Hardy

Decl. ¶ 7)).  Document 7 was "'transmitted for law enforcement purposes from [the State

Department] to the FBI.'"  *Id.*  The Department withheld this document in full pursuant to

Exemptions 3 and 7(E), and the Court concluded that the withholding was permissible under Exemption 3 and the National Security Act. *Id.* at 17–20. But the Court could not ascertain on the record before it whether all of Document 7 was properly withheld, or whether the Department could reasonably segregate the confidential portions of the document and release any non-confidential portions. *Id.* at 27. Although this issue presented "a close question," the Court concluded that the Department had failed to carry its burden with respect to segregability. *Id.* In particular, the declaration the Department offered in support of its motion—a declaration by Assistant Section Chief of the Record/Information Dissemination Section, Information Management Division, FBI, Michael G. Seidel, Dkt. 13-4 at 1 (Seidel Decl. ¶ 1)—offered only a "generic" explanation, did "little to explain specifically why no meaningful, non-exempt information in Document 7 could not be segregated and released, and appear[ed] to turn on the assessment that any non-exempt material 'would have *minimal* or no informational content.'" *Citizens United I*, 460 F. Supp. 3d at 27 (quoting Dkt. 13-4 at 21 (Seidel Decl. ¶ 50)) (emphasis added in opinion). In other words, the declaration suggested that some "minimal informational . . . content" could be segregated and released. *Id.* (quoting Dkt. 13-4 at 21 (Seidel Decl. ¶ 50)). Indeed, the declaration seemed "to acknowledge that entire 'sentences' might be segregable." *Id.* (quoting same). "To resolve any doubts about the possible release of any non-exempt portions of Document 7," the Court denied summary judgment on the issue without prejudice. *Id.*

In response, the Department renewed its motion for summary judgment and filed two supplemental declarations. Dkt. 24; Dkt. 24-3; Dkt. 24-4. But, having received further input from the FBI, the Department receded—at least in part—from its contention that all of the redactions to Document 4 were justified, and, on July 21, 2020, it re-released that document "with additional information unredacted." Dkt. 24-1 at 5. Despite that concession, however,

Citizens United opposes the Department's motion.  Dkt. 25.  The Court must now decide

whether the Department's more robust justifications for the remaining withholdings pass muster.

## II.  LEGAL STANDARD

Agencies must disclose records requested pursuant to the Freedom of Information Act

unless those records fall within one of nine exclusive statutory exemptions.  *Milner v. Dep't of

Navy*, 562 U.S. 562, 565 (2011).  "[T]he vast majority of FOIA cases can be resolved on

summary judgment."  *Citizens United I*, 460 F. Supp. 3d at 16 (quoting *Brayton v. Off. of U.S.

Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011)).  To prevail on a motion for summary judgment,

the movant must demonstrate "that there is no genuine dispute as to any material fact and [that it]

is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To meet its burden in a FOIA

case, an agency must submit declarations that are "relatively detailed and non-conclusory,"

*SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991), and that "describe the

justifications for nondisclosure with reasonably specific detail, demonstrate that the information

withheld logically falls within the claimed exemption, and are not controverted by either contrary

evidence in the record nor by evidence of agency bad faith."  *Larson v. Dep't of State*, 565 F.3d

857, 862 (D.C. Cir. 2009) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

An agency "is entitled to summary judgment if no material facts are in dispute and if it

demonstrates 'that each document that falls within the class requested either has been produced

. . . or is wholly exempt from [FOIA's] inspection requirements.'"  *Students Against Genocide v.

Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) (quoting *Goland v. CIA*, 607 F.2d 339, 352

(D.C. Cir. 1978)).  The Court reviews the agency's decision *de novo*, and the agency bears the

burden of sustaining its action.  5 U.S.C. § 552(a)(4)(B).

### III.  ANALYSIS

**A.      Redactions in Documents 4 and 9**

Document 4 is a two-page, typed set of notes, with one paragraph-sized redaction and two smaller, additional redacted blocks of text, Dkt. 27-1 at 3–4, and Document 9 is an eleven-page, handwritten set of notes with a roughly two-line redaction and a half-line redaction, Dkt. 11-6 at 22–32.  The State Department made all of the redactions at the behest of the FBI, except for one redaction on the second page of Document 4.  Dkt. 24-4 at 2–3 (Weetman Decl. ¶¶ 4–10).  As noted above, upon the FBI's review, the Department has released a version of Document 4 that reveals some of the material that it had previously redacted.  Dkt. 23 at 1; Dkt. 24-1 at 5; Dkt. 24-3 at 7 n.5; Dkt. 24-4 at 3 (Weetman Decl. ¶ 8).  In particular, the recently released version of Document 4 no longer withholds the following three sentences:  "He says he shared this information with the A/Legat.  He noted that he had offered it to the A/Legat  [redacted], but at the time the A/Legat said he 'didn't know what to do with it.'  Later on, the A/Legat said he was interested."  Dkt. 27-1 at 3; *see also* Dkt. 11-6 at 18.

Beyond releasing this additional material for Document 4, the Department now offers a more complete explanation for its withholdings from Documents 4 and 9.  Previously, the Department's justifications for the redactions made to Documents 4 and 9 consisted—in total—of the following:  (1) Document 4 "is a two-page typed set of notes purporting to be derived from a meeting [between Kathleen Kavalec,] Christopher Steele[,] and Tatyana Duran of Orbis Security on October 11, 2016," from which the Department redacted (a) "one sentence on the second page" that revealed "the place and date of issuance of an individual's U.S. visa [and] the visa's status," and (b) "additional information . . . on behalf of the FBI under FOIA Exemption 3, . . . pursuant to the National Security Act of 1947," under FOIA Exemption 1, and under FOIA

Exemption 7(E). Dkt. 13-5 at 11–12 (Stein Decl. ¶¶ 40–42); *see also* Dkt. 13-4 at 6 (Seidel Decl. ¶ 11). (2) Document 9 "is an eleven-page set of handwritten notes from a meeting with Christopher Steele and Tatyana Duran of Orbis Business Intelligence on October 11, 2016," which "were taken by Department employee Kathleen Kavalec," and which "[t]he Department withheld" in part "on behalf of the FBI under FOIA Exemption 3, . . . pursuant to the National Security Act of 1947," classified information pursuant to "FOIA Exemption 1," and additional information pursuant to FOIA Exemption 7(E). Dkt. 13-5 at 13 (Stein Decl. ¶¶ 48–49); *see also* Dkt. 13-4 at 6 (Stein Decl. Vaughn Index).

The Department now clarifies that Deputy Assistant Secretary of State Kavalec is the author of both documents, which record the same October 11, 2016 meeting between herself, Steele, and Orbis Security. Dkt. 24-3 at 5 (2d Seidel Decl. ¶ 5). Document 4 is "the typewritten," "more cogent, fulsome" version of her handwritten notes compiled in Document 9. *Id.* For the most part, the redactions in each document—and the justifications underlying them— correspond to one another. The Court will therefore consider the redactions of each document, and the Department's justifications, together.

    1.    *Non-Public Information About the Engagement of an Intelligence Source*

"The redaction on page 5 of Document 9 corresponds to the second redaction block on Document 4." Dkt. 24-3 at 5 (2d Seidel Decl. ¶ 7). The Department made these redactions at the FBI's behest, *id.* (2d Seidel Decl. ¶ 6), and it describes the redacted material as "non-public information about the engagement of an intelligence source (Steele) by the FBI, including where and when that engagement occurred," *id.* (2d Seidel Decl. ¶ 7). According to the FBI declarant, this information is protected by Executive Order 13,526, 75 Fed. Reg. 707 (Dec. 29, 2009) ("E.O. 13,526"), which authorizes, subject to certain conditions, the classification of information

that pertains to, *inter alia*, "intelligence activities (including covert action), intelligence sources

or methods, or cryptology," the disclosure of which "could reasonably be expected to cause . . .

damage to the national security," *id.* at 708.  As a result, according to the Department, the

redacted material is properly classified pursuant to E.O. 13,526, and it is thus protected from

disclosure pursuant to FOIA Exemption 1.  That exemption shields records "specifically

authorized under criteria established by an [e]xecutive order to be kept secret in the interest of

national defense or foreign policy," so long as the records "are in fact properly classified

pursuant to such [e]xecutive order."  5 U.S.C. § 552(b)(1); Dkt. 24-3 at 6 (2d Seidel Decl.

¶ 7(b)).

The Department further posits that "the FBI's engagement with an intelligence source"

constitutes "an intelligence method that the National Security Act . . . requires the FBI . . . to

protect from disclosure."  Dkt. 24-3 at 5–6 (2d Seidel Decl. ¶ 7(a)); 50 U.S.C. § 3024(i)(1) ("The

Director of National Intelligence shall protect intelligence sources and methods from

unauthorized disclosure.").  On this ground, the Department invokes FOIA Exemption 3, which

shields records "specifically exempted from disclosure by statute" if the relevant statute

"requires that the matters be withheld from the public in such a manner as to leave no discretion

on the issue . . . [or] establishes particular criteria for withholding or refers to particular types of

matters to be withheld."  5 U.S.C. § 552(b)(3)(A); Dkt. 24-3 at 5–6 (2d Seidel Decl. ¶ 7(a)).

Finally, the Department contends that the withheld information would "reveal non-public

details about the FBI's reliance on sources in national security investigations," Dkt. 24-3 at 7 (2d

Seidel Decl. ¶ 7(c)), and that, as a result, the information qualifies for protection under

Exemption 7(E).  That exemption safeguards records "compiled for law enforcement purposes"

that "would disclose techniques and procedures for law enforcement investigations or

prosecutions, or would disclose guidelines for [the same] if such disclosure could reasonably be expected to risk circumvention of the law."  5 U.S.C. § 552(b)(7)(E); Dkt. 24-3 at 6–7 (2d Seidel Decl. ¶ 7(c)).

"Although the Department has invoked several exemptions to justify its withholdings, it is sufficient if it properly invoked one exemption for each withholding."  *Citizens United I*, 460 F. Supp. 3d at 16–17.  Because the Department permissibly relied on Exemption 1, the Court need not consider whether its reliance on Exemptions 3 or 7(E) was also permissible.

Under Exemption 1, an agency may withhold "matters that are . . . specifically authorized under criteria established by an [e]xecutive order to be kept secret in the interest of national defense or foreign policy," which "are in fact properly classified pursuant to such [e]xecutive order."  5 U.S.C. § 552(b)(1).  Here, E.O. 13,526 authorizes the classification of information if:

(1)   an original classification authority is classifying the information;

(2)   the information is owned by, produced by or for, or is under the control of the United States Government;

(3)   the information falls within one or more of the categories of information listed in section 1.4 of [E.O. 13,526]; and

(4)   the original classification authority determines that the unauthorized disclosure of the information reasonably could be expected to result in damage to the national security, which includes defense against transnational terrorism, and the original classification authority is able to identify or describe the damage.

E.O. 13,526 § 1.1.  Section 1.4(c), in turn, establishes categories of information that qualify for classification, and those include "intelligence activities . . . , intelligence sources[,] or methods" the release of which "could reasonably be expected to cause identifiable or describable damage to the national security."

Accordingly, to invoke Exemption 1, the agency must offer evidence, in the form of a declaration or otherwise, showing that the information at issue was classified by an authorized official; that the information is owned by or is under the control of the federal government; that it relates to a covered subject matter, such as an intelligence activity or intelligence sources or methods; and that the classifying authority has determined that disclosure could reasonably "be expected to result in damage to the national security."  As the D.C. Circuit has recognized, "[t]his burden is not especially demanding; 'little proof or explanation is required beyond a plausible assertion that [the] information is properly classified,' and courts must accord 'substantial weight' to the agency's declaration 'concerning the details of the classified status of the disputed record.'"  *Citizens United I*, 460 F. Supp. 3d at 21 (quoting *Morley v. CIA*, 508 F.3d 1108, 1124 (D.C. Cir. 2007)).

Particularly when considered in light of the deferential standard that governs judicial review of executive branch classification determinations, the Court is persuaded that the first set of redactions are protected under Exemption 1.  To start, the information at issue was designated as classified by an authorized official.  Michael Seidel, who served as the Section Chief of the FBI's Record/Information Dissemination Section ("RIDS") at the relevant time, was "designated by the Attorney General of the United States as an original classification authority . . . pursuant to Executive Order 13526." Dkt. 24-3 at 2 (2d Seidel Decl. ¶ 2).  According to Seidel, the withheld "intelligence source and method information was . . . determined to be classified by an FBI Original Classification Authority" and "is currently and properly classified at the SECRET level."  *Id.* at 6 (2d Seidel Decl. ¶ 7(b)); *see also* 13-5 at 3–4 (Stein Decl. ¶ 12).  This satisfies the executive order's requirement that "an original classification authority is classifying the information."  E.O. 13,526 § 1.1.  The information at issue, moreover, was owned or controlled

by the United States.  Documents 4 and 9 are State Department records, created by a State Department official in the course of her employment, thus satisfying the second prong of the classification test.

As to the third and fourth prongs, Seidel explains "the information redacted on page 5 of Document 9 and in the second redaction block of Document 4 is intelligence method information about the FBI's engagement with an intelligence source" and "that disclosure of this intelligence source and method information could reasonably be expected to cause serious damage to national security."  Dkt. 24-3 at 6 (2d Seidel Decl. ¶ 7(b)).  He then explains that "[p]ieces of information like this about how or where the FBI engaged an intelligence source could be used, along with other publicly-available information about this and other sources, to form a mosaic picture about the FBI's engagement with intelligence sources that could be exploited to undermine FBI source interactions in the future."  *Id.*

This explanation suffices for purposes of Exemption 1 and, for that matter, would suffice under Exemption 3 as well.  As the declaration recognizes, "bits and pieces of data may aid in piecing together bits of other information even when the individual piece is not of obvious importance in itself."  *CIA v. Sims*, 471 US. 159, 178 (1985) (internal quotation marks and citation omitted).  Moreover, the nature of the subject matter limits an agency's ability to offer the type of detail that courts often require to justify invocation of other FOIA exemptions.  But "[g]iven the constraints of dealing with classified information and the need to avoid the disclosure of even 'innocuous information' that might form 'bits and pieces' of a 'mosaic' revealing information damaging to national security," the Court concludes that the Second Seidel declaration is "sufficiently detailed and [is] entitled to the presumption of good faith."  *Citizens United I*, 460 F. Supp. 3d at 22 (quoting *Sims*, 471 U.S. at 178).

Citizens United offers little in response to this showing.  It merely asserts, without citation to any precedent and only a passing reference to an Office of Inspector General Report, *Review of Four FISA Applications and Other Aspects of the FBI's Crossfire Hurricane Investigation* (2019), *available at* https://www.justice.gov/storage/120919-examination.pdf ("OIG Report"), that "[t]here is already public information regarding Steele's 'engagement' by the FBI;" that the "FBI uses the term 'engagement,'" and the OIG Report refers to Steele as a "confidential human source," while Steele characterized the relationship as "contractual;" and that "the FBI has acknowledged that the relationship was 'unorthodox and groundbreaking.'" Dkt. 25 at 2.  But, even if the Court were to accept Citizens United's factual representations, the Department's invocation of Exemption 1 would stand.  Citizen United does not, and cannot, dispute that the information at issue was properly classified and that disclosure could reasonably cause damage to national security by, for example, allowing adversaries of the United States to discern how the FBI engages with intelligence sources.

To the extent that Citizens United maintains that the Department has officially acknowledged the redacted information and has therefore waived Exemption 1's protection, a FOIA requester bears the burden of showing that: (1) "the information requested [is] as specific as the information previously released;" (2) the information sought "match[es] the information previously disclosed;" and (3) that information has "already . . . been made public through an official and documented disclosure." *Leopold v. CIA*, 987 F.3d 163, 170 (D.C. Cir. 2021) (quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990)).  Citizens United does not even attempt to satisfy this demanding standard.

In the alternative, Citizens United urges the Court to "direct the [Department] to provide the documents for *in camera* review to ensure that the withheld information is not similar to what

has already been disclosed." *Id.* This argument fails on multiple levels. Most notably, "[a]lthough Congress provided district courts the option to conduct *in camera* review under FOIA, the statute does not compel the exercise of that option;" to the contrary, such review "is neither necessary nor appropriate" "[w]hen the agency meets its burden by means of affidavits." *ACLU v. U.S. Dep't of Defense*, 628 F.3d 612, 626 (D.C. Cir. 2011) (internal quotation marks and citation omitted); *see also Hayden v. NSA*, 608 F.2d 1381, 1387 (D.C. Cir. 1979). For the reasons already explained, the Department has satisfied its burden as to the applicability of Exemption 1 and thus it is "neither necessary nor appropriate" for the Court to conduct the *in camera* review that Citizens United requests.

The Court will, accordingly, grant summary judgment in favor of the Department as to the redacted information in Documents 4 and 9 relating to engaging an intelligence source.[1]

2.    *Non-Public Information that Could Potentially Identify an Intelligence Source*

"The redaction on page 1 of Document 9 and the third redaction block on Document 4 . . . correspond to one another" and were also made at the behest of the FBI. Dkt. 24-2 at 4 (Def.'s SUMF ¶ 17); Dkt. 24-3 at 7 (2d Seidel Decl. ¶ 8); Dkt. 24-1 at 5. Seidel attests that these redactions involve "non-public information about an intelligence source (not Steele) that could potentially identify the source." Dkt. 24-3 at 7 (2d Seidel Decl. ¶ 8). The same goes for the first redaction block on Document 4, which "includes a description of this intelligence source, including profession, location, and contacts that could potential identify the source." *Id.* These

---

[1] In most cases, the agency must also show that it "reasonably foresees that disclosure would harm an interest protected by [the] exemption." *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(I)). However, "reasonably foreseeable harm need not be shown if 'disclosure is prohibited by law.'" *Hall & Assocs. v. EPA*, No. 18-cv-1749, 2021 WL 1226668, at *3 n.3 (D.D.C. Mar. 31, 2021) (quoting 5 U.S.C. § 552(a)(8)(A)(i)(II)). Thus, if information is properly withheld under Exemptions 1 or 3, the agency need not make a separate foreseeable harm showing.

redactions, in the Department's view, were therefore proper under Exemption 3 and the National Security Act and under Exemption 7(E).  Dkt. 24-1 at 14; Dkt. 24-3 at 8 (2d Seidel Decl. ¶ 8(a), (b)).  The Court agrees.

As the Court explained in *Citizens United I*, "Exemption 3 differs from other FOIA exemptions in that its applicability depends less on the detailed factual contents of specific documents; the sole issue for decision is the existence of a relevant statute and the inclusion of withheld material within the statute's coverage."  *Citizens United I*, 460 F. Supp. 3d at 17 (quoting *DiBacco v. U.S. Army*, 795 F.3d 178, 197 (D.C. Cir. 2015)).  Here, the Department relies on the National Security Act to support its withholdings on behalf of the FBI.  The National Security Act, in relevant part, requires the Director of National Intelligence to "protect intelligence sources and methods from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  Because the information at issue "is about an intelligence source[] and could identify the source," the Department explains, "the FBI was required to protect it."  Dkt. 24-1 at 14; Dkt. 24-3 at 8 (2d Seidel Decl. ¶ 8(a)).

"The D.C. Circuit has repeatedly held that the National Security Act 'is a valid Exemption 3 statute,'" *Citizens United I*, 460 F. Supp. 3d at 17 (quoting *DiBacco*, 795 F.3d at 183), and it has read the statute broadly to cover not only the names of intelligence sources but also, more generally, information related to such sources, *id.* at 19; *Cable News Network, Inc. v. FBI*, 384 F. Supp. 3d 19, 30–31 (D.D.C. 2019), *rev'd in part on other grounds*, 984 F.3d 114 (D.C. Cir. 2021).   That precedent is dispositive with respect to the first redacted block on Document 4.  The Court is required to afford the Seidel declaration a presumption of good faith, *SafeCard Servs.*, 926 F.2d at 1200, and Seidel attests that the redacted material includes "a description of [the undisclosed] intelligence source, including profession, location, and contacts."

14

Dkt. 24-3 at 7 (2d Seidel Decl. ¶ 8).  The Seidel declaration also explains that disclosure would violate the National Security Act's requirement to "protect intelligence sources . . . from unauthorized disclosure."  50 U.S.C. § 3024(i)(1).  The Court has little doubt that revealing such information could reasonably disclose the intelligence source.  But, in any event, the Court must defer to the FBI's determination, because "[t]he judiciary 'is in an extremely poor position to second-guess' the predictive judgments made by the government's intelligence agencies regarding" the risk of disclosure or the harm posed by such disclosure.  *Larson*, 565 F.3d at 865 (quoting *Ctr. for Nat'l Sec. Stud. v. Dep't of Justice*, 331 F.3d 918, 928 (D.C. Cir. 2003)).

The Department's redactions on page 1 of Document 9 and the third redacted block on Document 4 present a slightly closer question.  "Although the FBI's reliance on the [National Security Act] is entitled to substantial deference," the Department is not entitled to summary judgment if the declarations it provides are "too broad and conclusory to allow the Court to perform the type of 'searching *de novo* review' required by the governing precedent."  *Shapiro v. U.S. Dep't of Justice*, 239 F. Supp. 3d 100, 123 (D.D.C. 2017) (emphasis added) (quoting *Church of Scientology of Cal., Inc. v. Turner*, 662 F.2d 784, 786 (D.C. Cir. 1980)).  The Department does not detail how the redacted information relates to the intelligence source but, instead, asserts that the withholdings concern non-public information about an intelligence source other than Steele and that the release of this information could potentially identify that source.  Dkt. 24-3 (2d Seidel Decl. ¶ 8).  The Court is nonetheless persuaded that the Department has carried its burden.  Seidel explains that the specific redactions in question contain information about a particular intelligence source—other than Steele—and he also identifies the consequences of disclosure: publicly identifying that intelligence source.  That is enough, although just enough, to satisfy the requirements of Exemption 3.  *Compare Church of*

*Scientology*, 662 F.2d at 786 (holding that CIA carried its burden by submitting affidavits attesting that disclosure could reveal an intelligence source and discussing withheld information at the paragraph-by-paragraph level) *with Shapiro*, 239 F. Supp. 3d at 123 (holding the FBI's declarations insufficient because they referred in an unduly broad manner to the importance of shielding information pursuant to Exemption 3).  In light of the "deferential framework" for assessing the Department's invocation of Exemption 3 and the National Security Act and the inherent limitations on the detail that the Department can offer regarding matters of national security, the Court is persuaded that the redactions on the first page of Document 9 and the third block of redactions on Document 4 were proper.  *Citizens United I*, 460 F. Supp. 3d at 19.

Citizens United's response is, once again, exceedingly thin, the substance of which appears in a single sentence:  "Plaintiff does not believe that the protection of intelligence sources extends to the protection of persons pushing political opposition research about a presidential candidate in an effort to influence a presidential election." Dkt. 25 at 3.  But Citizens United cites no case law or relevant evidence, and its characterization of the undisclosed source amounts to the same kind of "unsupported speculation about the redacted information" that the Court previously deemed insufficient to overcome FOIA exemptions.  *Citizens United I*, 460 F. Supp. 3d at 22.  Citizens United also seeks *in camera* review, but, as with the other redactions and for the same reasons, such review is neither necessary nor appropriate.

The Court will, accordingly, grant summary judgment in the Department's favor with respect to the withholdings regarding the undisclosed intelligence source in Documents 4 and 9.

3.      *Visa Information*

 Finally, on its own initiative, the Department "withheld one sentence on the second page of [Document 4] because it consists of information regarding the issuance or refusal of a visa."

Dkt. 24-4 at 2 (Weetman Decl. ¶ 5); Dkt. 24-1 at 14.  According to the Department, this

withholding is consistent with Exemption 3 and the Immigration and Nationality Act ("INA"),

which provides in relevant part that:

> The records of the Department of State and of diplomatic and consular offices
> of the United States pertaining to the issuance or refusal of visas or permits to
> enter the United States shall be considered confidential and shall be used only
> for the formulation, amendment, administration, or enforcement of the
> immigration, nationality, and other laws of the United States, except that . . . in
> the discretion of the Secretary of State certified copies of such records may be
> made available to a court which certifies that the information contained in such
> records is needed by the court in the interest of the ends of justice in a case
> pending before the court.

8 U.S.C. § 1202(f).  Because the statute requires the Department to maintain the confidentiality

of records relating to the issuance or refusal of visas, the Department contends that it properly

withheld the information at issue pursuant to Exemption 3.  Dkt. 24-1 at 15.

Citizens United says nothing about this withholding, *see generally* Dkt. 25; *see also* Dkt.

25-1 at 3 (Response to SUMF ¶ 22), and thus arguably concedes the point.  In any event, that

concession is well taken.  In considering Exemption 3 and the same provision of the INA at issue

here—8 U.S.C. § 1202(f)—the D.C. Circuit has opined that § 1202(f) qualifies under Exemption

3 and that it broadly protects "information pertaining to visa issuances and denials."  *Medina-

Hincapie v. Dep't of State*, 700 F.2d 737, 742–44 (D.C. Cir. 1983); *see also Soto v. U.S. Dep't of

State*, 118 F. Supp. 3d 355, 365 (D.D.C. 2015).  Here, the Deputy Director of the State

Department's Office of Information Programs and Services attests that the redacted information

"describes the place of issuance, date of issuance, and current status of an individual's U.S.

visa."  Dkt. 24-4 at 2 (Weetman Decl. ¶ 5).  That is sufficient.

The Court will, accordingly, grant summary judgment in favor of the Department with

respect to the redaction on the second page of Document 4.

**B.      Segregability**

"FOIA requires that '[a]ny reasonably segregable portion of a record shall be provided to any person requesting such [a] record after deletion of portions which are exempt.'" *Taylor Energy Co. v. U.S. Dep't of Interior Bureau of Ocean Energy Mgmt.*, 271 F. Supp. 3d 73, 97 (D.D.C. 2017) (alteration in original) (quoting *Morley*, 508 F.3d at 1123). To satisfy its segregability obligation, an "agency must provide a 'detailed justification' for . . . non-segregability," *Johnson v. Exec. Off. for U.S. Atty's*, 310 F.3d 771, 776 (D.C. Cir. 2002) (quoting *Mead Data Ctr., Inc. v. Dep't of the Air Force*, 566 F.2d 242, 261 (D.C. Cir. 1977)) , such as "describing the materials withheld, the exemption under which they were withheld, and [offering] an affidavit attesting that 'it released all segregable material,'" *Taylor Energy Co.*, 271 F. Supp. 3d at 97 (citation omitted). The Court must then determine whether these representations "suffic[e] to fulfill the agency's obligation to show with 'reasonable specificity' why [the responsive documents could not] be further segregated." *Johnson*, 310 F.3d at 776 (quoting *Armstrong v. Exec. Off. of the Pres.*, 97 F.3d 575, 578–79 (D.C. Cir. 1996)).

1.      *Documents 4 and 9*

As discussed, the Department has provided a sufficient explanation for each remaining redaction in Documents 4 and 9. Based on these explanations for each withholding, the Court is persuaded that the Department has satisfied its burden to show "with reasonable specificity why" the contents of Documents 4 and 9 could not be further released. *Johnson*, 310 F.3d at 776 (internal quotation marks and citation omitted). This decision is made all the easier in light of the Department's entitlement "to a presumption that [it] complied with the obligation to disclose reasonably segregable material," which can be overcome only with some "quantum of evidence." *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007); *see also Soto*, 118 F.

Supp. 3d at 370; *Muttitt v. Dep't of State*, 926 F. Supp. 2d 284, 310 (D.D.C. 2013).  Citizens

United has offered no evidence to overcome this presumption of reasonable compliance.

    2.    *Document 7*

    In *Citizens United I*, the Court concluded that Document 7, "a five-page research

document prepared by a third party (not Christopher Steele)," was properly withheld pursuant to

Exemption 3 and the National Security Act, but declined to grant summary judgment as to

segregability.  On the question of segregability, the Court explained, the relevant declaration

"lack[ed] detail," was "relatively conclusory," and at least suggested that "entire 'sentences'

might be segregable."  *Citizens United I*, 460 F. Supp. 3d at 27.

    In its renewed motion for summary judgment, the Department offers additional

information regarding Document 7.  "[A] third party who had access to" Document 7 supplied

the document to the Department, which in turn transmitted the document to the FBI "because the

subject matter related to the FBI's investigation into Russian interference in the 2016

Presidential election."  Dkt. 24-3 at 9 (2d Seidel Decl. ¶ 10); Dkt. 24-1 at 15.  Document 7 itself

"is a printout directly from [a] limited access website (not accessible to the general public)."

Dkt. 24-3 at 9 (2d Seidel Decl. ¶ 10); Dkt. 24-1 at 15.  The FBI determined "that no portion of

the five-page document can be disclosed because the entire document is exempt pursuant to

Exemption 3."  Dkt. 24-3 at 9 (2d Seidel Decl. ¶ 11).  More specifically, "the entire document is

intelligence information, which if disclosed would reveal non-public information about [an]

intelligence/investigative method—*i.e.*, the specific research at issue."  *Id.* at 9 (2d Seidel Decl.

¶ 11).  In addition, revealing "the specific information on the pages would significantly narrow

down the identity of the source who supplied the information to [the Department], thus risking

the revelation of the intelligence source."  *Id.*  This explanation improves upon the conclusory

nature of the Department's previous explanation, which merely stated that "the information on these pages was fully covered by the cited FOIA exemptions" and "that any potentially non-exempt information was so intertwined with exempt information that it could not be reasonably segregated for release."  Dkt. 13-4 at 21 (1st Seidel Decl. ¶ 50); *Citizens United I*, 460 F. Supp. 3d at 26–27 (referencing same).

That leaves the ambiguity of the Department's previous declaration, which claimed that "segregating any non-exempt information on these pages would result only in the release of disjointed words, phrases, or sentences that taken separately or together would have minimal or no informational content."  Dkt. 13-4 at 21 (1st Seidel Decl. ¶ 50).  From that declaration, the Court previously inferred that it might be possible—or, at least, that the declarant had not foreclosed the possibility—that the Department could release non-exempt "sentences" from the document that convey at least some "minimal" content.

In his second declaration, Seidel acknowledges that he now "realize[s] that [his statement] may have caused confusion in context."  Dkt. 24-3 at 9 (2d Seidel Decl. ¶ 12).  His statement, however, "was meant to convey only that there may be random words or phrases—such as 'for example,' 'in conclusion,' 'and,' 'the,' 'however,' 'thus,' etc.—that standing entirely on their own would not be exempt but that provide no informational content and thus are not reasonably segregable."  *Id.* at 9–10 (2d Seidel Decl. ¶ 12).  "To clarify," he explains, the FBI has concluded that Exemption 3 applies to the entire document and that "disclosure of any portion of it risks revealing exempt information such as the location and source of the original information."  *Id.* at 10 (2d Seidel Decl. ¶ 13).  This clarification directly addresses the source of "[t]he Court's hesitancy" as to the segregability of Document 7 in *Citizens United I*.  460 F. Supp. 3d at 27.

In response, Citizens United argues that the Court should review Document 7 *in camera*.
Dkt. 25 at 3.  Because "Document 7 appears to have been in the public domain since the fall of
2016," by Citizens United's account, "some, if not all, of the withheld information from
Document 7" is public.  *Id.* at 4.  In support of this contention, Citizens United attaches to its
opposition a "printoff" that, according to Citizens United's counsel, constitutes "a portion of
[the] research document" at issue.  Dkt. 25-2 at 2 (Morgan Decl. ¶ 6).  Counsel further attests
that it "has been reported" that the printout is "contained in Document 7" and argues that, if so,
at least that portion of Document 7 is both non-exempt and segregable.  *Id.* at 1–2 (Morgan Decl.
¶¶ 3–5).

Separate from Exhibit B, Citizens United also argues that a Department of Justice, Office
of Inspector General Report has already acknowledged the origin and content of Document 7 in
the following passage:

> Two days after the meeting with Steele, Kavalec emailed an FBI CD Section
> Chief [Stephen Laycock] a document that Kavalec **received from [Jonathan]**
> **Winer** discussing allegations about a linkage between [Russian] Alfa Bank and
> the **Trump campaign**, a topic that was discussed at the October 11 meeting.
> Kavalec advised the FBI Section Chief in the email that the information related
> to an investigation that Steele's firm had been conducting.

Dkt 25 at 4 (quoting OIG Report) (bracketed inserts and emphasis in opposition brief).  Based on
this passage, Citizens United maintains that "'the specific research at issue' [in Document 7] is
no secret."  *Id.* at 4–5.  And finally, Citizens United claims that "it is known that some of the
'research' connected to Document 7 was in the possession of an attorney with a law firm that
represented the 2016 Democratic presidential nominee as early as the summer of 2016," and this
attorney "testified that he had provided such similar information to the FBI in September 2016."
*Id.* at 5.  If the attorney is the protected intelligence source, Citizens United reasons, "then

[Document 7] would not reveal non-public information about whoever the intelligence source was." *Id.* at 6.

Citizens United's arguments boils down to the contention that at least some information contained in Document 7 is already public, as shown purportedly by news stories, other non-governmental reporting, and the OIG Report.  It further argues that the protected intelligence source might be a lawyer who has already testified to providing information to the FBI.  The Court is unpersuaded.

To the extent Citizens United maintains that at least some of the information at issue is not properly protected under Exemption 3 and the National Security Act because no reasonably foreseeable harm is likely to result from the disclosure of information that, according to Citizens United, is "already known to anyone with internet access and a web browser," Dkt. 25 at 5, its argument is unavailing.  Although the FOIA Improvement Act of 2016, Pub. L. No. 114-185, §§ 2, 6, 130 Stat. 538, 539, 544-45 (2016), permits agencies to withhold information, in whole or in part, "only if . . . the agency reasonably foresees that disclosure would harm an interest protected by an exemption described in subsection (b)," that provision does not apply to information that is "exempted from disclosure under subsection (b)(3)."  5 U.S.C. § 552(a)(8); *see also Machado Amadis*, 971 F.3d at 370; *Hall & Assocs.*, 2021 WL 1226668, at *3 n.3.  And, in any event, even if some of the information at issue were present "in some form in the public domain," that would "not necessarily mean that official disclosure [would] not cause harm cognizable under a FOIA exemption."  *Wolf v. CIA*, 473 F.3d 370, 378 (D.C. Cir. 2007).

Citizens United is, accordingly, left to argue that the Department of Justice or the FBI waived Exemption 3's protections through official acknowledgement.  To make out that claim, Citizens United bears the heavy burden of showing that: (1) "the information requested [is] as

specific as the information previously released;" (2) the information sought "match[es] the information previously disclosed;" and (3) that information has "already . . . been made public through an official and documented disclosure." *Leopold*, 987 F.3d at 170 (citation omitted).

Citizens United has not met this burden. For one thing, "the requesting plaintiff must pinpoint an agency record that both matches the plaintiff's request and [that] has been publicly and officially acknowledged *by the agency*." *Moore v. CIA*, 666 F.3d 1330, 1333 (D.C. Cir. 2011) (emphasis added). But even if Document 7 consists in part of the information in Exhibit B—and the Court expresses no view on that question—Citizens United offers no evidence that the State Department, the Justice Department, or the FBI officially released or acknowledged any such thing.

The closest that Citizens United comes to an "official" statement of any kind is its citation to the OIG Report, which merely states that Kavalec sent an email from "Winer" to the FBI and that the email concerned information about the Trump campaign's links to Alpha Bank, a topic of conversation at the Steele meeting. Dkt. 25 at 4–5. That assertion does not come close to satisfying the demanding standard for official acknowledgment: Citizens United does not even argue that Document 7 is "as specific as the information previously released" or that it "match[es] the information previously disclosed." *Leopold*, 987 F.3d at 170. Because Citizens United has not shown that "the specific information" that it seeks is already in the public domain and that it is there by virtue of an "official disclosure," *Wolf*, 473 F.3d at 378 (emphasis omitted), its argument fails. Nor is this conclusion a mere technicality. As the D.C. Circuit has observed, this "insistence on exactitude recognizes 'the Government's vital interest in information relating to national security and foreign affairs,'" *id.*, and it ensures that the protection of intelligence sources and methods is not undermined over time through speculation, unauthorized disclosures,

or limited or unrelated disclosures that were never intended to open the door to wholesale disclosure.

Finally, Citizens United, once again, asks that the Court resolve any uncertainty by conducting an *in camera* review.  But, once again, such review is "neither necessary nor appropriate" where, as here, the Department has met its burden, and the FOIA requester has not met its own.  *ACLU*, 628 F.3d at 626 (internal quotation marks and citation omitted); *see also Hayden*, 608 F.2d at 1387.

The Court will, accordingly, grant summary judgment in favor of the Department with respect to the segregability of Document 7.

## CONCLUSION

For the reasons set forth above, the Court will **GRANT** the Department's motion for summary judgment, Dkt. 24.

A separate order will issue.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  July 29, 2021